JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.
**462 In this appeal, we consider what impact a driver's failure to inform his auto insurance carrier about litigation against an underinsured tortfeasor has on the driver's later ability to collect on his underinsured motorist ("UIM") policy. Specifically, we address to what extent a carrier is required to pay a UIM claim when its subrogation rights are totally nullified.
Plaintiff Robert Ferrante was involved in an automobile accident in 2006 where the other motorist ("the tortfeasor") indisputably caused the collision. Without informing his auto insurance carrier, defendant New Jersey Manufacturers Insurance Group ("NJM"), Ferrante initiated a negligence lawsuit against the tortfeasor, who had a liability limit of $100,000 on his insurance policy. The parties participated in mandatory arbitration, which set Ferrante's damages at $90,000. Again, without informing NJM and allowing it to exercise its subrogation rights, Ferrante rejected the **463 award, and sought a trial de novo. He also refused a $50,000 settlement offer without notifying NJM.
Prior to the trial, Ferrante entered into a high-low agreement with the tortfeasor, which set the range of damages between $25,000 and $100,000, notwithstanding a jury verdict. Ferrante did not communicate this agreement or the trial itself to NJM, either. Following the trial, a jury awarded plaintiff $200,000 in damages, but the Law Division entered a judgment of $100,000 based on the high-low agreement.
For the first time in 2011, Ferrante sent NJM a letter required by Longworth v. Van Houten, 223 N.J. Super. 174, 538 A.2d 414 (App. Div. 1988), stating that he was seeking UIM benefits. In the letter, Ferrante wrote that the tortfeasor was willing to settle for $100,000. However, Ferrante failed to mention the arbitration, high-low agreement, completed trial, or jury verdict. Based on this information, NJM told Ferrante to accept the offer. NJM and Ferrante proceeded to litigation over UIM coverage in the Law Division. Only during a pretrial discovery exchange did Ferrante finally disclose his past dealings with the tortfeasor.
NJM moved to dismiss the complaint, and the Law Division granted the motion, finding that Ferrante violated Longworth by not notifying NJM of any of the proceedings with the tortfeasor. On appeal, a split panel of the Appellate Division reversed. The majority held that because the trial court did not consider if NJM was actually prejudiced by the lack of notice, a remand was needed to determine if NJM sustained any prejudice.
We disagree. In Zirger v. General Accident Insurance Co., 144 N.J. 327, 676 A.2d 1065 (1996), we imposed a duty on insureds to notify their carriers at the initiation of litigation with tortfeasors; Longworth and our later opinion in Rutgers Casualty Insurance Co. v. Vassas, 139 N.J. 163, 652 A.2d 162 (1995), mandated that insureds *1136 inform their carriers of settlement offers. Our precedent was not followed here. Due to the complete absence of notice by Ferrante to NJM at any point over years of litigation, including the lack of notice about the high-low agreement or completed jury **464 trial during the UIM process, NJM may refuse to pay the UIM benefits. Therefore, we reverse the Appellate Division judgment.
I.
A.
Ferrante was in a motor vehicle collision with the tortfeasor on October 2, 2006. The parties do not dispute that the tortfeasor was at fault for the collision and that his policy's limit was $100,000. Aside from the tortfeasor's insurance coverage, he is essentially without assets to pay damages that exceed $100,000.
At the time of the accident, Ferrante's policy with NJM provided for $300,000 in UIM coverage. The policy required Ferrante to "promptly" send NJM any legal papers regarding litigation and to "notify [NJM] in writing of a tentative settlement" with the underinsured motorist's insurance carrier. This process gave NJM thirty days to pay the insured the tortfeasor's insurance carrier's offer in order to preserve its subrogation rights. The policy also required Ferrante to do "whatever is necessary to enable NJM to exercise" its subrogation rights and do "[n]othing after loss to prejudice" those rights.
Instead of contacting NJM, Ferrante and his wife initiated a lawsuit against the tortfeasor in 2008, asserting negligence claims and the wife's per quod claims. Ferrante did not notify NJM of the suit. The parties proceeded to arbitration. In May 2010, the arbitrator awarded Ferrante $90,000 for his injuries and $10,000 in lost wages, but he rejected that offer without noticing NJM. He moved for a trial de novo in the Law Division in June 2010.
The tortfeasor offered to settle with Ferrante for $50,000. He alternately proposed a high-low agreement that would limit damages notwithstanding the exact amount of the verdict. The agreement set the floor of damages at $25,000 and the ceiling at $100,000. Ferrante rejected the settlement offer, but accepted the high-low agreement. He did not notify NJM of either proposal, or of his acceptance of the high-low agreement.
**465 At the ensuing trial de novo in January 2011, in which NJM did not participate, a jury found the tortfeasor one hundred percent liable. The jury awarded Ferrante $200,000 in damages, and his wife $50,000 on her claim. However, due to the high-low agreement, the trial court molded the entire award to $100,000, and entered judgment.
On January 12, 2011, the day after the judgment, Ferrante's counsel sent NJM a letter. He told NJM that "the tortfeasor's carrier has tendered the policy limits of $100,000 in exchange for execution of a Release in favor of the tortfeasor," and requested NJM's consent to settle. Additionally, he informed NJM that Ferrante would pursue UIM arbitration for his injuries beyond the $100,000. The letter failed to mention any of the prior offers, the high-low agreement, the arbitration, the completed trial with a molded award or the judgment.
Two weeks later, NJM responded and indicated it had performed an asset investigation regarding the tortfeasor. NJM authorized Ferrante to settle, and waived its subrogation rights. It then began to seek information about the UIM claim.
*1137 B.
In October 2012, Ferrante filed the instant UIM claim in the Law Division, and the parties engaged in discovery. Not until 2014 did Ferrante inform NJM about the $250,000 judgment in the prior litigation. NJM filed a motion in limine seeking to limit Ferrante's recovery to $50,000-what NJM considered to be the difference between the tortfeasor judgment and the $300,000 UIM policy limit.
Shortly thereafter, Ferrante's attorney disclosed to NJM that his client had entered into the high-low agreement with the tortfeasor that capped damages at $100,000. NJM then amended its motion in limine to instead move for a dismissal, claiming that Ferrante had improperly waived NJM's subrogation rights. NJM argued that Ferrante had violated **466 Zirger, 144 N.J. at 340, 676 A.2d 1065, which obligated insureds to inform their UIM carriers of suits against tortfeasors.
The Law Division dismissed the complaint in an oral decision on February 28, 2014.[1] The court found that Ferrante failed to provide any notice of settlement offers, as required by Longworth, 223 N.J. Super. at 194-95, 538 A.2d 414, and the eventual notice to NJM was "grossly incomplete" and "woefully deficient." The court ruled that by entering into a high-low agreement, Ferrante had waived future UIM claims against NJM.
Ferrante appealed, arguing that NJM had waived its subrogation rights by authorizing him to accept the tortfeasor's settlement offer. Further, he alleged that NJM waived its Longworth defense by not raising it during discovery.
In a two-to-one decision, with Judge Accurso dissenting, the Appellate Division reversed the trial court. The majority first found that Ferrante did not waive his UIM coverage by entering into the high-low agreement. The court noted that the agreement did not reflect the value of the case, but rather was a contractual protection that Ferrante entered into to mitigate the inherent risk of a jury trial. The $100,000 range, the court wrote, was a logical cap because it was the limit of the tortfeasor's policy, as Ferrante had determined his adversary was without assets.
The majority next determined that NJM needed to demonstrate prejudice from the deficient Longworth notice in order to void the UIM policy. The court distinguished Ferrante's situation from the setting of this Court's opinion in Vassas, 139 N.J. at 175-76, 652 A.2d 162, in which we released the carrier from its UIM obligation. The court found that because Ferrante contended that NJM was not prejudiced by his actions, the case was different from Vassas, in which prejudice was assumed. The court determined that even though NJM was not in a position to exercise its **467 right to subrogation because of Ferrante's conduct, it was not necessarily excused from paying UIM benefits.
Because the trial judge did not address the issue of prejudice, the court remanded the matter to analyze whether Ferrante's failure to provide a timely Longworth notice actually prejudiced NJM. In that deliberation, the court placed the burden on Ferrante.
In a dissent, Judge Accurso disagreed that NJM must demonstrate prejudice in order to void the UIM claim. Rather, she found that Ferrante's failure to provide any notice to NJM during the initial suit and his later omission of the trial proceedings and high-low agreement caused NJM's subrogation rights to be "irretrievably *1138 lost." She concluded the case fit squarely within Vassas and thus would have ruled in favor of NJM.
NJM filed its appeal as of right under Rule 2:2-1(a)(2). Our review is limited to the issue raised by Judge Accurso.
II.
NJM argues that this Court should adopt Judge Accurso's reasoning in her dissenting opinion and reverse the Appellate Division's judgment. It advocates that delaying disclosure and omitting information were intentional acts that robbed NJM of its rights to subrogation or participation in the trial with the tortfeasor. NJM argues that Ferrante cannot be entitled to UIM benefits because he sent the required Longworth letter two years after the initial settlement offer. Although NJM concedes that an insured who negligently did not send a Longworth notice may be entitled to UIM benefits, in Ferrante's situation, where he strategically opted against sending the notice, the right to UIM coverage is destroyed.
Ferrante, on the other hand, denies deceiving NJM and urges this Court to affirm the Appellate Division's opinion and allow the trial court to determine if NJM was prejudiced. Ferrante admits that his Longworth notice was defective, but faults NJM for **468 failing to raise this deficiency until after discovery and only on the eve of trial.
Additionally, Ferrante asserts that he was not required to notify NJM at all prior to an offer from the tortfeasor, which he says did not occur until immediately prior to the tortfeasor trial. He also argues that Vassas only requires the insured to notify a carrier when there is an offer for the policy limits of the tortfeasor. Further, he argues the notice requirement in Zirger gives him the option of informing NJM of a settlement offer, and is not a mandate. Prior to the judgment, he argues, he had no reason to believe that the claim would be worth the tortfeasor's $100,000 policy limit.
III.
A.
When reviewing a grant of summary judgment, an appellate court employs the same standards used by the motion judge. Bhagat v. Bhagat, 217 N.J. 22, 38, 84 A.3d 583 (2014) (citing W.J.A. v. D.A., 210 N.J. 229, 237-38, 43 A.3d 1148 (2012) ). The reviewing court must first determine whether the moving party has demonstrated there were no genuine issues of material fact. Ibid. If not, then the Court must decide "whether the moving party is entitled to summary judgment as a matter of law." Ibid. Absent factual questions, this Court reviews legal determinations de novo. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199, 129 A.3d 1069 (2016) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) ).
B.
Our case law has routinely emphasized the importance of candor by insureds and the obligation to act in a forthright, open, and honest manner with their carriers throughout the entire process of their claim. See **469 Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 539, 582 A.2d 1257 (1990) ("[A]n insured's commitment not to misrepresent material facts extends beyond the inception of the policy to a post-loss investigation.") We have provided insureds "an incentive to tell the truth. It would dilute that incentive to allow an insured to gamble that a lie will turn out to be unimportant." *1139 Id. at 541-42, 582 A.2d 1257. Although this case arises in a different context, we seek to avoid rewarding insureds for omitting key details in a UIM claim.
The relationship between an insurer and the insured is contractual, but the obligation to offer UIM coverage is derived from statute. See Zirger, 144 N.J. at 333, 676 A.2d 1065 ; N.J.S.A. 17:28-1.1(b). An individual against whom recovery is sought after an accident is considered "underinsured" when his or her liability limits are, "at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery." N.J.S.A. 17:28-1.1(e)(1).
The Legislature requires carriers "to offer each insured the option of purchasing coverage up to the limits of liability coverage, but not exceeding $250,000 per person and $500,000 per accident against the risk of injury caused by underinsured tortfeasors or a single limit of $500,000." Zirger, 144 N.J. at 333, 676 A.2d 1065 (citing N.J.S.A. 17:28-1.1(b) ). The availability of UIM coverage "reflects a strong public-policy interest in providing ... adequate compensation to New Jersey Motorists for injuries sustained in accidents with underinsured motorists." Id. at 334, 676 A.2d 1065.
In Zirger, we outlined the right of UIM carriers to intervene in trials against tortfeasors as a way to avoid relitigating a plaintiff's claim and as a method of binding them to the issues at trial. Id. at 340-42, 676 A.2d 1065. Thus, plaintiffs are affirmatively obligated to provide their carriers with notice "of the institution of suit against the tortfeasor." Id. at 340-41, 676 A.2d 1065 (citing Vassas, 139 N.J. at 174, 652 A.2d 162 ). To what extent the carrier will participate in the underlying trial is determined by the trial court, see Rule 4:33-2, but there is no flexibility in an insured's **470 obligation to communicate the lawsuit to the carrier. Zirger, 144 N.J. at 340-41, 676 A.2d 1065.
This duty to notify in the UIM context is intended to protect a carrier's right of subrogation. Ferrante's policy with NJM specifically provided for a subrogation right, which allows the "subrogee in effect [to] step into the shoes of the insured and ... recover only if the insured likewise could have recovered." Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 172, 104 A.2d 288 (1954) (citations omitted). The law "highly favors" subrogation as "a device of equity to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it." Holloway v. State, 125 N.J. 386, 394, 593 A.2d 716 (1991) (quoting Pellecchia, 15 N.J. at 171, 104 A.2d 288 ). In practice, the insurer may choose to pay out the insured for the loss and retain a cause of action against the tortfeasor. Ibid.
In Longworth, the Appellate Division grappled with an insured's initial obligation to attempt to recover from a tortfeasor prior to pursuing UIM benefits from his carrier. 223 N.J. Super. at 177-78, 538 A.2d 414. To protect itself from paying out a full claim, an insurance carrier could seek reimbursement from the tortfeasor who caused the loss. Id. at 183, 538 A.2d 414. However, the court recognized that the carrier's pursuit of subrogation against the wrongdoer has an "adverse effect ... on the statutorily-accorded competing and paramount right of the insured victim to seek as full a recovery as possible from the combined resources of the tortfeasor's liability carrier and his own UIM carrier." Ibid. This issue arises because the insured must seek "recovery from the tortfeasor's insurer as a prerequisite to recourse to the UIM coverage." Ibid.
*1140 Longworth noted the tension in this process, as the insurer would inevitably seek to keep the damages low, thus providing the insured with minimal recovery for his injuries. Ibid. Regardless of those conflicts, the court determined that when the insured received "an acceptable settlement offer" from the tortfeasor, he must notify the UIM carrier. Id. at 194, 538 A.2d 414. Then, the **471 carrier may decide either to allow the insured to accept the offer or provide the insured with the same amount in exchange for the assignment of the subrogation right against the tortfeasor. Ibid.
We sought to balance the tensions of UIM subrogation cases in Vassas, 139 N.J. at 171-72, 652 A.2d 162. Importantly, the issue there was protecting the insured's ability to recover from the tortfeasor in addition to his own UIM coverage, while allowing the carrier the opportunity to evaluate the merits of the UIM claim while "maintaining a subrogation action against the tortfeasor." Id. at 175, 652 A.2d 162.
To protect those interests, we identified the occasions when the insured must notify the carrier: (1) when he or she takes legal action against the tortfeasor; (2) "[i]f, during the pendency of the claim, the tortfeasor's insurance coverage proves insufficient to satisfy the insured's damages"; and (3) if the insured is seeking UIM benefits because he or she "receive[d] a settlement offer or arbitration award that does not completely satisfy the claim, because the tortfeasor is underinsured." Id. at 174, 652 A.2d 162.
In explicitly ratifying the Longworth holding, we held that after receiving notice in the third scenario, the carrier either can "offer to pay the insured the amount of the tortfeasor's settlement offer or the arbitration award, usually the tortfeasor's policy limit, in exchange for subrogation of the insured's rights against the tortfeasor; or, allow the insured to settle." Id. at 174-75, 652 A.2d 162.
Based on the facts presented in Vassas, we found in favor of the carrier. Id. at 175-76, 652 A.2d 162. The insured filed a suit against the tortfeasor without informing the carrier, and, after later receiving an award from an arbitrator, he again failed to notify the carrier. Id. at 175, 652 A.2d 162. We held that his failure "to comply with the provisions of his insurance contract and the dictates of Longworth" barred him from recovering UIM benefits. Id. at 176, 652 A.2d 162.
**472 Following Vassas, the Appellate Division analyzed several cases involving disputed UIM benefits. The Appellate Division has found that an insured who accepted a settlement offer after informing his carrier of the offer, but before he received permission, did not necessarily violate Longworth. Breitenbach v. Motor Club of Am. Ins. Co., 295 N.J. Super. 328, 332-34, 685 A.2d 36 (App. Div. 1996). There, the court remanded for a determination of prejudice, which it reasoned, the Vassas court did not prohibit. Id. at 335, 685 A.2d 36.
In Rivers, the Appellate Division found for the carrier when the insured sent two letters informing the carrier of litigation but failed to detail that he had already settled the case. Rivers v. Allstate Ins. Co., 312 N.J. Super. 379, 381, 711 A.2d 974 (App. Div. 1998). Because the insured did not show why the carrier was not prejudiced by losing its subrogation rights, the court denied him UIM benefits. Id. at 386, 711 A.2d 974.
And in Cave, the insured initiated a lawsuit against two tortfeasors and properly informed the carrier. CNA Ins. Cos. v. Cave, 332 N.J. Super. 185, 186-88, 753 A.2d 141 (App. Div. 2000). The carrier waived its subrogation rights against one tortfeasor but never made a decision as to the other tortfeasor, so the matter proceeded *1141 to trial. Id. at 188, 753 A.2d 141. Before trial, the insured accepted a settlement offer without consulting the carrier, and later sought UIM benefits. Id. at 189, 753 A.2d 141. Although the court found the insured violated Longworth, it held that unlike in Vassas where the carrier was unfairly prejudiced by the loss of its subrogation rights, it was less clear there who was at fault. Id. at 193, 753 A.2d 141. UIM arbitration was appropriate, the court held, because if only one tortfeasor was found to be at fault, the carrier could not be prejudiced. Ibid.
IV.
With those principles in mind, we turn to whether Ferrante's actions violated Longworth and Vassas to the extent that they vitiated his ability to seek UIM benefits from NJM.
**473 Despite Ferrante's efforts to distinguish his case from Vassas, we find Vassas precludes him from recovering UIM benefits. Like in Vassas, where the insured initiated a lawsuit and received an arbitration award without informing the carrier, Ferrante did the same. He further violated his duty to inform NJM by entering into a high-low agreement and taking the matter through a full jury trial without informing NJM.
In addition, Ferrante improperly extinguished NJM's right under Zirger to participate in the trial and mitigate damages in some way. Zirger is not premised on the idea that the insured has to give notice to the carrier only if he thinks the UIM claim will exceed the policy limit. The purpose of this notice is to give a carrier the opportunity to pay the insured the settlement proceeds and then try the case itself as if in the insured's shoes. At minimum, the notice allows the carrier to participate in the trial to whatever extent the trial court allows. By virtue of Ferrante's actions in this case, NJM lost that subrogation option.
Ferrante has also attempted to rely on our precedent in Green v. Selective Insurance Co. of America, 144 N.J. 344, 346, 676 A.2d 1074 (1996). However, those facts are inapposite to the facts here.
A plaintiff's duty to notify the UIM carrier is not mitigated by plaintiff's earlier notice of a PIP claim. An insurer's handling of an earlier PIP claim does not create a presumption that the insurer has received notice of the later claim against the tortfeasors.
Unlike in Green, where the carrier had the opportunity to exercise its subrogation rights after the initial settlement offer and chose not to, NJM here was never told about the arbitration, high-low agreement, jury verdict, or judgment until after the events occurred. A prejudice determination here is not needed unlike in Green, where the carrier waived its subrogation rights, because NJM never had the opportunity to exercise its rights.
Further, the cited Appellate Division cases are distinguishable due to the numerous times Ferrante failed to inform NJM. In **474 Breitenbach and Rivers, the insured informed the carrier during litigation, and both cases dealt more with at which point, if any, it was appropriate for the insured to accept the settlement offer without the carrier's consent. Here, we never reach that point because Ferrante did not inform NJM of the litigation until more than two years after it was initiated and actually completed. Similarly, this case did not involve a day-of-trial settlement or include multiple tortfeasors, as in Cave; here, the single tortfeasor was well known, and NJM was still kept in the dark throughout.
As a defense to his actions, Ferrante has argued that if he negligently, rather than *1142 intentionally, violated Longworth, the trial court should conduct a prejudice analysis. We conclude that due to the numerous landmarks where Ferrante could have, and should have, but did not notify NJM, we need not address his state of mind or weigh any potential prejudice to the carrier.[2]
Our decision here is not rooted in Ferrante's state of mind, but rather in his actions. We ratify the following approach suggested by the dissenting judge:
If ... the insured, regardless of his state of mind, fails to give the UIM carrier any notice of the UIM claim until after the final resolution of the underlying tort action, thereby causing the irretrievable loss of the carrier's rights to subrogation and intervention before the carrier has ever learned of the existence of the claim, coverage is forfeited.
By delaying notice to NJM, Ferrante violated the terms of his policy, Longworth, Vassas, and Zirger, which required him to inform NJM as soon as the lawsuit was brought-not after arbitration, a high-low agreement, or a jury trial. Those requirements seek to protect NJM's right to subrogation, which was clearly extinguished by Ferrante's actions, irrespective of his state of mind.
**475 V.
Accordingly, we reverse the judgment of the Appellate Division and reinstate the trial court's order.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA's opinion.

After oral argument, the trial court granted summary judgment in favor of NJM in an oral decision. The granted order noted it as a motion in limine.

Counsel for NJM suggests that if the insured's failure to provide notice was the result of pure negligence, and there was no misleading conduct, it may be appropriate to impose a rebuttable presumption of prejudice and place the burden on the insured to show the absence of prejudice. We need not resolve that issue in this case.