**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2591-15T1
    A-2922-16T1

HARCO INDUSTRIES, INC., USA,
BENOTECH CORPORATION, YORK TRADING
CORPORATION, TECH DISTRIBUTING, INC.
and NORTH ASSOCIATES, INC.,

  Plaintiffs-Respondents,

v.

GOMIDAS HARTOUNIAN, MGB, LLC,
SOUND SECURITY OF RICHMOND, LTD.,
and WILLIAM NOVAK,

  Defendants,

and

SHANTI KURSCHNER,

  Defendant-Appellant,

and

GOMIDAS HARTOUNIAN, individually and
derivatively as a minority shareholder
of Harco Industries, Inc., USA,

  Third-Party Plaintiff,

vs.

HARCO INDUSTRIES, INC., USA, HARCO
INCENTIVE SOLUTIONS, INC., BENOTECH

COROPORATION, YORK TRADING CORPORATION,
TECH DISTRUBTING, INC., SARO HARTOUNIAN
and NAREG HARTOUNIAN,

    Third-Party Defendants.

_____

<blockquote>

Submitted March 19, 2018 — Decided July 24, 2018

Before Judges Accurso and Vernoia.

On appeal from Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000089-15.

Noel E. Schablik, PA, attorney for appellant.

Chiesa, Shahinian & Giantomasi, PC, attorneys for respondents (Adam K. Derman and Brigitte M. Gladis, on the brief).

</blockquote>

PER CURIAM

In these consolidated appeals, defendant Shanti Kurschner challenges a January 15, 2016 order granting summary judgment to plaintiffs Harco Industries, Inc., USA, Benotech Corporation, York Trading Corporation, Tech Distributing, Inc. and North Associates, Inc., a February 12, 2016 supplemental order awarding damages, and a January 24, 2017 order denying defendant's Rule 4:50-1 motion for relief from the prior orders.  Having reviewed the record in light of the applicable legal principles, we affirm in part and reverse in part the court's orders granting summary judgment and awarding damages, dismiss as moot defendant's appeal of the order denying her Rule 4:50-1 motion and remand for further proceedings.

In March 2014, plaintiffs discovered their chief financial officer, Gomidas Hartounian, embezzled in excess of $4,600,000 from them during the previous four years.[1] On March 31, 2014, plaintiffs confronted Hartounian, and he admitted stealing the funds and agreed to make repayment.

The following day, Hartounian wrote two checks totaling $750,000 from accounts containing the stolen funds. The checks were made payable to Sound Security of Richmond, Ltd. (Sound Security), and deposited in a Sound Security bank account. Defendant and her father, William Novak, are Sound Security's principals, and each had authority to sign checks drawn on the Sound Security account. Six days after the $750,000 deposit, Novak wrote a $50,000 check from the account to defendant for what defendant later testified was an interest-free loan.

Plaintiffs filed a complaint against Hartounian and a company he controlled, MGM, LLC, asserting claims related to the embezzlement. In an amended complaint filed on September 29, 2014, plaintiffs added defendant, Novak and Sound Security as parties, and alleged defendant and Novak knew the $750,000 received

---

[1] It was later determined Hartounian embezzled a total in excess of $6,100,000 from plaintiffs over a five-year period.

from Hartounian was stolen, fraudulently deposited the funds in the Sound Security account, used some of the funds to pay Hartounian's and their own expenses, and permitted Hartounian to control the expenditure of the stolen funds. The amended complaint included claims against defendant, Novak and Sound Security alleging: the $750,000 deposited in Sound Security's account constituted a fraudulent transfer under the Uniform Fraudulent Transfer Act (UFTA), N.J.S.A. 25:2-20 to -34 (count ten):[2] defendant, Novak and Sound Security aided and abetted Hartounian's fraudulent transfer of the funds (count eleven); defendant, Novak, and Sound Security conspired with Hartounian to hide the stolen funds from plaintiffs and deprive plaintiffs of the funds (count twelve); and defendant, Novak and Sound Security were unjustly enriched by their receipt of the stolen funds (count thirteen).

In February 2015, the court preliminarily enjoined defendant, Novak and Sound Security from disbursing any of the monies remaining in the Sound Security account. The court also directed that defendant send any payments on the $50,000 loan to plaintiffs' counsel to be held in escrow pending resolution of the case.

Eight months later, plaintiffs moved for summary judgment on their claims against all defendants. In support of their motion,

---

[2] Hartounian and MGM, LLC are also named defendants in count ten.

plaintiffs provided a detailed statement of material facts in accordance with Rule 4:46-2. The facts detailed Hartounian's theft of almost $6.2 million from plaintiffs, and his deposit of $750,000 of the stolen funds into Sound Security's account. Plaintiffs also explained that defendant and Novak were principals of Sound Security and authorized signatories on the Sound Security account, which had a balance of only $723 prior to the $750,000 deposit.

Plaintiffs' statement of material facts further showed that during the five months following the April 1, 2014 deposit, Novak personally withdrew over $141,000 from the account, disbursed funds to Hartounian's wife and counsel, and spent some of the funds on motor vehicles, art, jewelry, and a Florida timeshare.[3] Novak also issued a $50,000 check to defendant from the account for the loan.

Plaintiffs also detailed Novak's deposition testimony that the deposit constituted a payment from Hartounian for the sale of diamond rings Novak gave Hartounian to sell, but Novak could not produce any documentary evidence showing his ownership of the

---

[3]  By September 2014, Novak disbursed all but $149,808.91 of the stolen funds from the Sound Security account.

purported rings, their value or his alleged arrangement with Hartounian for their sale.[4]

Plaintiffs' statement of material facts also detailed defendant's actions upon which plaintiffs' summary judgment motion was based. Plaintiffs showed defendant received a $50,000 check from Novak six days after the $750,000 deposit, and that defendant testified at her deposition the money was an interest-free loan from her father. Defendant further testified she intended to repay the loan and had begun doing so. She produced six $1,000 checks to Novak that she testified constituted loan repayments.[5] Novak did not make any other loan repayments and, in a May 4, 2015 certification to the court, Novak confirmed defendant had "not made a payment on her loan in months."

In opposition to plaintiffs' summary judgment motion, defendant's counsel, who also represented Novak and Sound Security, did not submit a counterstatement of material facts as required by Rule 4:46-2(b). Instead, he submitted a letter brief

---

[4] According to the statement of material facts, Novak produced two photographs of women's hands with rings on them as putative evidence of his ownership of the alleged rings and testified he took the photographs with his digital camera, but refused to supply the camera for inspection to permit plaintiffs to determine when the photographs were actually taken.

[5] The checks were dated May 1, June 4, July 4, August 1, September 1 and September 30, 2014, respectively.

arguing plaintiffs did not sustain their burden of presenting evidence entitling them to judgment as a matter of law and, in the alternative, plaintiffs' submissions demonstrated issues of material fact precluding the award of summary judgment.

After hearing argument, the court rendered a written decision and order granting plaintiffs' motion as to all defendants. With regard to defendant, the court first noted that neither she, Novak nor Sound Security contested plaintiffs' statement of material facts in accordance with Rule 4:46-2(b). The court next found the undisputed facts established Hartounian deposited $750,000 of the stolen funds in the Sound Security account, and determined the deposit constituted a fraudulent transfer under the UFTA.

The court also observed that defendant did not make any payments on the loan following its February 12, 2015 order directing that all payments be made to plaintiffs' counsel, and rejected as not credible defendant and Novak's deposition testimony, which plaintiffs submitted to the court in support of its summary judgment motion, that the $50,000 Novak gave defendant was a loan.

The court found defendant aided and abetted Hartounian's fraudulent transfer of the stolen funds because "Novak accepted" the funds and permitted Hartounian's "continued" access to them, and Novak and defendant "used the funds for personal use." The

court did not make any specific factual findings supporting its determination defendant participated in a civil conspiracy to commit the fraudulent transfer, but instead found only that "Novak was aware of [Hartounian's] fraudulent transfer, [and] agreed to assist in the theft by accepting the monies . . . ."

Last, the court found the unrefuted evidence established that defendant, Novak and Sound Security were unjustly enriched by their receipt of $750,000 in stolen funds. The court found Novak acknowledged receipt of the funds from Hartounian and claimed the funds constituted payment for the rings, but never produced any evidence in opposition to plaintiffs' motion. The court concluded defendant, Novak and Sound Security "must disgorge the monies received in the fraudulent transfer."

The court imposed a constructive trust on the monies traceable to the fraudulent transfer, including "the $50,000 loan to" defendant, and found defendant, Novak and Sound Security jointly and severally liable to plaintiffs in the amount of $750,000, plus prejudgment interest. The court denied plaintiffs' request for summary judgment on their claim for punitive damages against defendant, Novak and Sound Security, finding "[t]here is insufficient evidence to demonstrate [they] knew the $750,000 was acquired as a result of fraud."

A-2591-15T1

The court subsequently conducted a plenary hearing on the issue of damages against Hartounian and MGM, LLC, and prejudgment interest as to all defendants.[6] The court entered a February 12, 2016 supplemental order setting forth its damage awards, and imposing a constructive trust on any assets obtained with the stolen funds.

Defendant retained new counsel and filed a motion for relief from the court's orders under Rule 4:50-1. She argued the orders were entered because her prior counsel did not keep her informed about a settlement offer, and failed to submit adequate opposition to plaintiffs' summary judgment motion. She also claimed she was responsible to plaintiffs only for the balance due on the $50,000 loan Novak funded from the stolen monies.

In a January 24, 2017 order and written statement of reasons, the court denied the motion. The court reasoned that defendant did not present exceptional circumstances permitting relief under Rule 4:50-1.

In A-2591-15 defendant filed a notice of appeal from the original and supplemental summary judgment orders, and in A-2922-16 appealed from the order denying her motion for relief from the

---

[6] Defendant did not participate in the damages hearing.

orders under Rule 4:50-1. We consolidated the appeals. Defendant

presents the following arguments for our consideration:

POINT I

THE TRIAL COURT ERRED IN GRANTING SUMMARY
JUDGEMENT AGAINST KURSCHNER[.]

A. Standard of Review[.]

B. The Trial Court's Decision Was Improper As
There Was A Genuine Issue of Material Fact As
To Whether The Payment Received By Kurschner
Was A Loan From Novak.

C. The Court Misapplied The Law As It
Essentially Negated The Mental State
Requirements.

POINT II

THE TRIAL COURT ERRED IN DENYING THE MOTION
FOR RELIEF FROM JUDGMENT.

A. Standard of Review[.]

B. The Trial Court Abused Its Discretion In
Denying the Motion For Relief From [Judgment]
Based On Behrins' Egregious Negligence.

II.

Our review of an order granting summary judgment is plenary

and "in accordance with the same standard as the motion judge."

Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 135-36 (2017)

(quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). We must "view

the evidence in the light most favorable to" defendant, Steinberg

v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 349 (2016), and determine

whether "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law," Elazar, 230 N.J. at 135 (quoting R. 4:46-2); see also Brill v. Guardian Life Ins. Co. Am., 142 N.J. 520, 528-29 (1995).

In our consideration of an order granting summary judgment, we "must analyze the record in light of the substantive standard and burden of proof that a factfinder would apply in the event that the case were tried." Globe Motor Co. v. Iqdalev, 225 N.J. 469, 480 (2016). We cannot "ignore the elements of the cause[s] of action or the evidential standard governing the cause[s] of action, ibid., and "must view the record with all legitimate inferences drawn in the defendant's favor and decide whether a reasonable factfinder could determine that the plaintiff has not met its burden of proof," id. at 481. A plaintiff does not demonstrate an entitlement to a "judgment or order as a matter of law," ibid. (quoting R. 4:46-2(c)), where the record presented to the court shows that "a reasonable factfinder could decide . . . in defendant's favor," ibid. Applying these principles, we are constrained to conclude the court erred in part by granting plaintiffs' motion for summary judgment.

Defendant does not dispute, and the record supports, the court's conclusion that Hartounian's $750,000 payment to the Sound Security account was a fraudulent transfer under the UFTA. The evidence presented in support of plaintiffs' summary judgment motion established Hartounian transferred the funds "with the intent to hinder, delay or defraud" plaintiffs' efforts to recoup the monies he embezzled. See N.J.S.A. 25:2-25; see also Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005) (explaining "[t]he UFTA was designed as a vehicle by which creditors may recover from debtors and others who hinder their collection efforts.").

The court found defendant liable for the fraudulent transfer based on its determination plaintiffs presented evidence establishing defendant participated in a civil conspiracy to effectuate the transfer and aided and abetted the transfer. In our view, however, the court erred because, giving defendant the benefit of all reasonable inferences that could be drawn in her favor, the evidence supporting plaintiffs' summary judgment motion does not permit a reasonable conclusion that plaintiffs sustained their burden of proof on their civil conspiracy and aiding and abetting claims. See Globe Motor Co., 225 N.J. at 480-81.

In Gandi, the Court considered a claim that an attorney engaged in a civil conspiracy to violate the UFTA by assisting in

a client's transfer of assets to defraud a creditor. 184 N.J. at 165. The Court defined a civil conspiracy as

> a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.
>
> [Id. at 177 (quoting Morgan v. Union Cty. Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364 (App. Div. 1993)).]

"To establish a conspiracy, 'it simply must be shown that there was a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences.'" Morgan, 268 N.J. Super. at 365 (citation omitted). A court will find a civil conspiracy where the purported conspirator understood "the general objectives of the scheme, accept[ed] them, and agree[d], either explicitly or implicitly, to do [their] part to further them." Gandi, 184 N.J. at 177 (citation omitted).

Plaintiffs' statement of material facts established Hartounian and Novak agreed to the transfer of the $750,000, and defendant does not argue otherwise. The funds were deposited in the Sound Security account the day after Hartounian was first confronted about his embezzlement, and thereafter Novak disbursed

the funds for his own personal benefit, and on Hartounian's behalf and at his direction. Plaintiffs' statement of material facts demonstrates Novak's active participation in the receipt of the funds from Hartounian, his communications with Hartounian concerning the transfer and deposit of the funds, and his disbursement of the funds for Hartounian's and his personal benefit. Plaintiffs' unrefuted statement of material facts satisfied their burden of establishing an agreement between Novak and Hartounian to defraud plaintiffs through the transfer of the $750,000.

Missing from plaintiffs' statement of material facts is any showing defendant knew of Hartounian's and Novak's plan and its objectives, or that she accepted them or agreed to do her part to further them. See Gandi, 184 N.J. at 177; Morgan, 268 N.J. Super. at 365. There is no evidence defendant had any involvement in the receipt of the funds, their deposit in the account or their disbursement. The facts presented by plaintiffs only showed defendant was a principal in Sound Security, was a signatory on the Sound Security account and received a $50,000 loan from Novak six days after the $750,000 deposit was made.

We find nothing in that limited evidence satisfying plaintiffs' burden of establishing defendant knew of the fraudulent transfer, accepted it or agreed to assist in

effectuating it.   See Gandi, 184 N.J. at 177.   We reject plaintiffs' contention, and the court's conclusion, that defendant's receipt of $50,000 from Novak and subsequent failure to pay back the alleged loan establishes her participation in a civil conspiracy to effectuate the fraudulent transfer.   The contention is founded on the premise that the $50,000 payment to defendant was not a loan from Novak.   But plaintiffs' statement of material facts showed defendant testified the payment was a loan, and defendant is entitled to the benefit of all such facts in our consideration of whether plaintiffs sustained their burden of proof in their motion for summary judgment.   See Global Motor Co., 225 N.J. at 480.   In addition, we do not determine the credibility of defendant's testimony concerning the loan in our consideration of plaintiffs' summary judgment motion.   See Brill, 142 N.J. at 536.

Accepting, as we must, defendant's testimony and all reasonable inferences that flow from it, see Globe Motor Co., 225 N.J. at 481, her acceptance of a $50,000 loan from Novak following the $750,000 deposit does not establish she knew about the fraudulent transfer, accepted it or agreed with Novak or Hartounian to participate in a transfer she knew was fraudulent. Plaintiffs' statement of material facts does not show defendant knew Hartounian's deposit had been made, that it was fraudulent or that

it was the source of the funds for the loan. We are not persuaded such knowledge can be reasonably imputed to defendant solely because she is a principal in Sound Security and a signatory on its account.

Giving all reasonable inferences to defendant, her testimony which plaintiffs presented to the motion court establishes only that she accepted a loan from her father, and made six monthly payments to him in repayment. The testimony provides no support for the conclusion she engaged in a civil conspiracy to effectuate Hartounian's fraudulent transfer.[7] We therefore reverse the court's orders granting plaintiffs' summary judgment against defendant on their civil conspiracy claim.

For the same reasons, we reverse the court's orders granting summary judgment against defendant on the aiding and abetting claim. To demonstrate an entitlement to summary judgment on their aiding and abetting claim, plaintiffs were required to present evidence establishing "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides assistance; (3)

---

[7] We similarly reject the court's conclusion defendant's failure to make any payments on the loan after September 2014 and following the court's February 12, 2015 order proves she engaged in a civil conspiracy concerning the fraudulent transfer.

the defendant must knowingly and substantially assist in the principal violation." State, Dep't of Treasury, Div. of Inv. ex rel McCormac v. Qwest Comms. Intern, Inc., 387 N.J. Super. 469, 483 (App. Div. 2006) (citation omitted).

Again, plaintiffs' statement of material facts is insufficient. The limited facts concerning defendant simply do not establish defendant knew or was aware of Hartounian's fraudulent transfer, or took any action to "knowingly [or] substantially assist" in it. See ibid. To the contrary, the statement of material facts plaintiffs presented, viewed most favorably to defendant, showed no more than defendant was a principal in Sound Security, was an authorized signatory on the account and obtained a $50,000 loan from her father. Based on that evidence, a rational factfinder could reasonably conclude defendant was wholly unaware of the fraudulent transfer when she accepted the loan, and that she did not aid and abet Hartounian's unlawful conduct. Plaintiffs did not present sufficient evidence establishing they were entitled to summary judgment on the aiding and abetting claim, see Globe Motor Co., 225 N.J. at 480, and we reverse the court's orders entering summary judgment on that claim against defendant.

Under the circumstances presented, it is of no moment that defendant failed to properly dispute plaintiffs' statement of

material facts in accordance with Rule 4:46-2(b) in her opposition to the summary judgment motion. Plaintiffs bore the burden of presenting sufficient evidence to satisfy their burden of proof on the causes of action asserted. Akhtar v. JDN Props. at Florham Park, LLC, 439 N.J. Super. 391, 401 (App. Div. 2015) (noting that where "the movant is also the party bearing the burden of persuasion," the party "must show that the record contains evidence satisfying the burden of persuasion"). Their failure to sustain that burden on the civil conspiracy and aiding and abetting claims made summary judgment inappropriate on those courts, notwithstanding defendant's failure to properly oppose the motion.[8] See ibid.; see also Ferrante v. N.J. Mfrs. Ins. Grp., 232 N.J. 460, 468 (2018) (noting the party moving for summary judgment must demonstrate there is no genuine issue of material fact).

We last address the court's award of summary judgment on plaintiffs' unjust enrichment claim. To prove unjust enrichment,

---

[8] We do not reverse the court's order finding Hartounian's transfer of the $750,000 into the Sound Security account constituted a fraudulent transfer under the UFTA as alleged in count ten. That determination alone, however, does not support the court's determination defendant is liable for the transfer. The court's determination of defendant's liability is based on its conclusion plaintiffs were entitled to summary judgment on the aiding and abetting (count eleven), conspiracy (count twelve) and unjust enrichment (count thirteen) causes of action.

"'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust' and that the plaintiff 'expected remuneration' and the failure to give remuneration unjustly enriched the defendant." EnviroFinance Group, LLC v. Envtl. Barrier Co., LLC, 440 N.J. Super. 325, 350 (App. Div. 2015) (quoting VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994)). For the reasons noted, we are convinced plaintiffs' showed Hartounian's transfer of $750,000 into the Sound Security account was a fraudulent transfer which became the source of Novak's $50,000 loan to defendant.

We are also satisfied plaintiffs established that permitting defendant to retain the $50,000 without repayment to plaintiffs would unjustly enrich defendant. Because there was insufficient evidence establishing defendant conspired to effectuate, or aided and abetted, the fraudulent transfer, we vacate the court's orders entering a $750,000 judgment against defendant on the unjust enrichment claim. We affirm, however, the court's orders awarding summary judgment on the unjust enrichment claim as to the $50,000 loan, awarding $50,000 in damages against defendant on the claim and imposing a constructive trust on the $50,000 defendant received. On remand, plaintiffs may pursue their unjust enrichment claim for the balance of the $750,000, and their civil conspiracy

A-2591-15T1

and aiding and abetting claims, based on the evidence presented at trial.

Because we reverse the court's orders granting summary judgment on plaintiffs' aiding and abetting and civil conspiracy claims and, reverse in part the courts' orders granting summary judgment on the unjust enrichment claim, we dismiss as moot defendant's appeal of the court's order denying her motion for relief from the summary judgment orders under Rule 4:50-1. In her Rule 4:50-1 motion, defendant did not seek relief from those portions of the court's orders awarding plaintiffs a $50,000 judgment against her on the unjust enrichment claim. She conceded she was obligated to make repayment of the $50,000 Novak loaned her. Defendant sought relief only from those portions of the orders finding her liable on the unjust enrichment claim for amounts in excess of $50,000. Because we affirm those portions of the court's orders from which defendant did not seek relief under Rule 4:50-1, and reverse those portions of the orders from which she did seek relief, we need not consider the court's disposition of the Rule 4:50-1 motion and dismiss the appeal in A-2922-16 as moot.

Reversed in part, affirmed in part and remanded for further proceedings in A-2591-15. Dismissed as moot in A-2922-16. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

20

A-2591-15T1