**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0728-18T4

JAMES RYAN DIMARIA,

    Plaintiff-Appellant,

v.

TRAVELERS INSURANCE
GROUP,

    Defendant-Respondent.

_____

Submitted September 23, 2019 – Decided October 4, 2019

Before Judges Ostrer and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2101-17.

The Di Maria Law Firm, LLC, attorneys for appellant (Diana Di Maria, of counsel and on the briefs).

Methfessel & Werbel, attorneys for respondent (Stephen Robert Katzman, of counsel and on the brief; Christian R. Baillie, on the brief).

PER CURIAM

This insurance coverage dispute concerns an insured's failure to timely notify his auto insurer of an automobile accident caused by an uninsured driver. By the time defendant Travelers Insurance Group (Travelers) received notice, the statute of limitations had expired, precluding the insurer's suit against the tortfeasor or others responsible. Based on that delay, Travelers denied the policyholder's request for uninsured motorist (UM) benefits. On cross-motions for summary judgment, the court rejected the policyholder's claim for a declaration of coverage, and entered summary judgment dismissal for Travelers.

On the policyholder's appeal, we affirm. Based on Ferrante v. New Jersey Manufacturers Insurance Group, 232 N.J. 460 (2018), we conclude that the policyholder forfeited his coverage by causing the irretrievable loss of the insurer's subrogation rights.

I.

On January 4, 2014, plaintiff James Ryan DiMaria, a Paterson fire inspector, collided with a vehicle operated by Michelle Rodriguez, and owned by her mother Arianna Rodriguez. DiMaria claimed the accident caused permanent neck and head injuries.

Michelle Rodriguez's fault was disputed. According to the police report, which referenced city video surveillance footage, DiMaria collided with the

Rodriguez vehicle after he proceeded through a red light into an intersection. DiMaria was driving his city vehicle. Although his siren and emergency lights were activated, the police report stated that plaintiff's inattention was an "apparent contributing circumstance[]" of the accident. DiMaria contended that Rodriguez was at fault, for failing to yield to an emergency vehicle.

Assisted by counsel, DiMaria sought workers compensation benefits in the months following the collision. Although DiMaria viewed the surveillance footage, it was not preserved, and was erased as a matter of course after thirty days. In June 2014, Farmers Insurance – which counsel apparently believed may have insured the Rodriguez vehicle or driver – denied coverage. Counsel discovered no other insurance, and Travelers failed to identify any after a subsequent investigation.

Counsel learned that the city's insurance did not provide UM coverage. On the other hand, DiMaria's personal policy with Travelers provided $500,000 of UM coverage. Nonetheless, it was not until September 9, 2016 that new counsel for DiMaria notified Travelers of his UM claim.

On May 8, 2017, Travelers denied the UM claim because its "right of subrogation [had] been foreclosed due to the failure to file suit against the alleged tortfeasor within the two year statute of limitations."

The Travelers policy provides, under the heading "General Duties," that "[w]e [Travelers] must be notified promptly of how, when and where the accident or loss happened." Among "Additional Duties for Uninsured Motorists Coverage," the policy provides, "A person seeking [UM] Coverage must also: Promptly notify the police if a hit and run driver is involved. Promptly send us copies of the legal papers if a suit is brought." In the New Jersey endorsement for UM and Underinsured Motorist (UIM) coverage, under the heading "Reimbursement and Trust Agreement," the policy requires the insured to do what is necessary to secure the insurer's subrogation rights. The paragraph states:

> If we make a payment under this coverage, the "insured" must repay us from money collected for the same damages from any persons or organizations legally responsible for the accident. The "insured" will hold in trust for us all rights of recovery against any persons or organizations legally responsible for the accident. The "insured" will do whatever is necessary to secure these rights and do nothing after the accident to prejudice these rights.

DiMaria filed his declaratory judgment action in response to Travelers' denial of coverage. After a period of discovery, the parties cross-moved for summary judgment. DiMaria argued that Travelers suffered no prejudice from his delay. He alleged, based on an investigator's report, that Michelle Rodriguez

4

was then an unemployed eighteen-year-old student who lacked assets and had educational and credit card debt.

Travelers responded that Michelle Rodriguez's debt was minimal, and the report did not find she lacked any assets; rather it stated she did not own real property. Travelers also alleged that Arianna Rodriguez, the vehicle owner, owned real estate, although it may have been encumbered by a loan exceeding its value. Travelers contended that it would have been futile to fully assess the Rodriguezes' assets because the statute of limitations had already run. Travelers argued it suffered prejudice from DiMaria's delay because its subrogation action was barred, and the failure to preserve the surveillance video impaired its ability to assess fault for the accident.

In a cogent written opinion in Travelers' favor, Assignment Judge Ernest M. Caposela held that DiMaria's delay in notifying Travelers of the accident resulted in its irretrievable loss of subrogation rights against the alleged tortfeasor or others potentially responsible. The judge held that under Ferrante, DiMaria's UM claim was barred. The judge added that DiMaria's delay prejudiced Travelers' ability to investigate the cause of the accident, and to determine whether DiMaria was comparatively more at fault than Rodriguez,

5

which would preclude recovery against her or against Travelers. This appeal followed.

## II.

Reviewing the trial court's order de novo, applying the same summary judgment standard as it did, see Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010) (describing standard of review), we discern no genuine issue of material fact, and conclude, as did the trial court, that Travelers is entitled to judgment as a matter of law. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995) (setting forth summary judgment standard under R. 4:46-2).

We are unpersuaded by DiMaria's contention that the trial court misread the policy. Highlighting the statement in Travelers' coverage denial letter, DiMaria asserts that he was not obliged to file suit against the alleged tortfeasor. Judge Caposela correctly concluded that whether DiMaria filed suit against the alleged tortfeasor was not critical. Rather, DiMaria's material breach of his duties under the policy was his failure to notify Travelers of the accident in a timely way.

DiMaria also misinterprets the "Reimbursement and Trust Agreement" paragraph. He contends his obligation to "do whatever is necessary to secure"

A-0728-18T4

Travelers' subrogation rights was conditioned upon Travelers' prior payment of UM benefits. We look to the policy language's plain meaning. Absent ambiguity, we will "not 'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one purchased." Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008) (quoting Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 272-73 (2001)). The clause, "If we make a payment under this coverage," is found only in the first sentence of the "Reimbursement and Trust Agreement" paragraph. Thus, only the insured's delineated repayment obligation is triggered by the insurer's payment. The insured's obligations, set forth in the second and third sentences of the paragraph, to hold in trust any recovery rights, to secure those rights, and to do nothing to prejudice them, are not conditioned on the insurer's prior payment.

We also are unpersuaded by DiMaria's argument that Travelers was obliged to show that it suffered appreciable prejudice as a result of his duties under the policy, and that it failed to do so. Travelers was not obliged to demonstrate prejudice. If prejudice were relevant at all, it was DiMaria's burden to show that Travelers suffered none. See, e.g., CNA Ins. Cos. v. Cave, 332 N.J. Super. 185, 190 (App. Div. 2000) (in UIM case, placing burden on insured to

A-0728-18T4

show lack of prejudice from failure to provide notice under <u>Longworth v. Van Houten</u>, 223 N.J. Super. 174 (App. Div. 1988)); <u>Breitenbach v. Motor Club of Am. Ins. Co.</u>, 295 N.J. Super. 328, 334 (App. Div. 1996) (same).

In <u>Ferrante</u>, the Supreme Court reviewed the line of cases that has addressed an insured's failure to notify his or her insurer of an accident and a potential claim for UIM benefits. The Supreme Court concluded in <u>Ferrante</u> that a prejudice determination is not needed where the insurer "never had the opportunity to exercise its [subrogation] rights." 232 N.J. at 473.

The <u>Ferrante</u> Court stated the issue as: "to what extent a carrier is required to pay a UIM claim when its subrogation rights are totally nullified." <u>Id.</u> at 462. Injured by an underinsured tortfeasor, the plaintiff kept his UIM insurer in the dark while he prosecuted a personal injury action against the tortfeasor, including entering into a high-low agreement with the tortfeasor's $100,000 policy limit as the high end, and going to trial and securing a jury award of $250,000. <u>Id.</u> at 462-63. Without mentioning the high-low agreement, the plaintiff's attorney then notified the insurer and secured its authorization to settle at $100,000. <u>Id.</u> at 463. Having performed an asset search of the tortfeasor, the insurer also waived its subrogation rights. <u>Id.</u> at 465. Three years later, the plaintiff informed the insurer about the original $250,000 judgment and the

high-low agreement. Id. The insurer subsequently sued to bar the plaintiff's UIM claim because he improperly destroyed the insurer's subrogation rights and failed to comply with the notification requirements. Id. at 465-66. The insured failed to give the insurer notice "until more than two years after [its suit against the tortfeasor] was initiated and actually completed." Id. at 474.

The Supreme Court rejected the view of the Appellate Division majority that the insured could recover if he showed that the insurer was not prejudiced. Id. at 466-67, 474. The Court highlighted "the importance of candor by insureds," and expressed its disinclination to "reward[] insureds for omitting key details in a UIM claim." Id. at 468-69. An insured's "duty to notify in the UIM context is intended to protect a carrier's right of subrogation." Id. at 470. The Court concluded that the plaintiff violated that duty by failing to disclose its lawsuit, the high-low agreement, and the jury trial. Id. at 473.

The Court rejected the suggestion that only intentional failures to notify the insurer should bar a claim regardless of prejudice to the insurer. Id. at 474. The Court held that "coverage is forfeited" by an insured who "regardless of his state of mind, fails to give the UIM carrier any notice of the UIM claim until after the final resolution of the underlying tort action, thereby causing the irretrievable loss of the carrier's rights to subrogation and intervention." Id.

The Supreme Court found support for its decision in <u>Rutgers Casualty Insurance Co. v. Vassas</u>, 139 N.J. 163 (1995). <u>Ferrante</u>, 232 N.J. at 471-72. In <u>Vassas</u>, the insured notified his insurer of his UIM claim three years after the accident. 139 N.J. at 166. By that time, the insured had sued the tortfeasor, gone to arbitration, accepted an arbitration award significantly below the UIM limits, reduced the award to judgment, and executed a warrant of satisfaction to the tortfeasor. <u>Id.</u> As the limitations period for a subrogation action was the same two-year period that governed the victim's suit against the tortfeasor, any subrogation action was time-barred. <u>Id.</u> at 169-70. Reviewing the insured's contractual obligation to provide notice, the <u>Vassas</u> Court held that the insured "unfairly prejudiced [the insurer's] subrogation right against [the tortfeasor], contrary to the requirements of his insurance policy. [The insured's] failure to comply with those contractual provisions [were] sufficient to bar his UIM claim against [the insurer]." <u>Id.</u> at 170.

The <u>Ferrante</u> Court also reviewed three post-<u>Vassas</u> decisions of our court, which recognized circumstances in which an insured could preserve UIM coverage, despite late notice or an unapproved settlement with a tortfeasor, if the insured could show that the insurer did not suffer any prejudice. 232 N.J. at 472, 474 (discussing <u>Breitenbach</u>, <u>Cave</u>, and <u>Rivers v. Allstate Ins. Co.</u>, 312 N.J.

10

Super. 379 (App. Div. 1998)). The three cases dealt specifically with the notice required by Longworth. The Ferrante Court noted that in Breitenbach, we held that Vassas did not expressly prohibit a prejudice determination; the issue was not addressed. Ferrante, 232 N.J. at 472.

In Rivers, we also declined to read Vassas "to create a bright-line rule that the insured's failure to protect the insurer's right of subrogation amounts to prejudice per se, sufficient under all circumstances to deny the insured UIM benefits and excuse the insurer from its coverage obligation." 312 N.J. Super. at 386. We barred the insured from UIM benefits because she failed to show a lack of prejudice to the insurer after she entered into a binding settlement with the tortfeasor, precluding the insurer's subrogation rights. Id.; see Ferrante, 232 N.J. at 472 (discussing Rivers).

Finally, the Ferrante Court reviewed Cave. In Cave, the insured settled with one underinsured driver, and on the eve of trial, settled with a second, convinced that he was not negligent at all. 332 N.J. Super. at 188-89. We held that the insured was entitled to UIM arbitration because if the second driver was not negligent, there was no prejudice. Id. at 192-93. As the Ferrante Court explained, "if only one tortfeasor was found to be at fault, the carrier could not be prejudiced." 232 N.J. at 472.

The Ferrante Court rejected the insured's "efforts to distinguish his case from Vassas, [and found] Vassas preclude[d] him from recovering UIM benefits." Id. at 473. The Ferrante Court distinguished Breitenbach, Rivers, and Cave on the basis that in all three, the insured had communicated in some way with his or her insurer. Id. at 474. Breitenbach and Rivers focused on the question, "at which point, if any, it was appropriate for the insured to accept the settlement offer without the carrier's consent." Ibid. By contrast, the insured in Ferrante "did not inform [his insurer] of the litigation until more than two years after it was initiated and actually completed." Ibid. Unlike Cave, which involved a day-of-trial settlement and included multiple tortfeasors, Ferrante involved "the single tortfeasor [who] was well known and [the insurer] was still kept in the dark throughout." Ibid.

The Ferrante Court endorsed Judge Accurso's dissenting view in the Appellate Division that if an insured's failure of notice causes "the irretrievable loss of the carrier's rights to subrogation and intervention before the carrier has ever learned of the existence of the claim, coverage is forfeited." Ibid.

We are constrained by Ferrante to affirm the dismissal of DiMaria's claim for UM coverage, notwithstanding the significance of the forfeiture. As in Ferrante – and unlike in Breitenbach, Cave, and Rivers – DiMaria's attorney

failed to provide Travelers any notice of the claim until after its subrogation rights were entirely lost. Although one may debate the capacity of either Rodriguez to satisfy any judgment – assuming they were found at fault – Travelers was nevertheless entitled under <u>Ferrante</u> to preserve its subrogation rights. The irretrievable loss of those rights results in a forfeiture of coverage. 232 N.J. at 474.

We recognize that this case applies to UM rather than UIM coverage. However, as we recognized in <u>Brown v. Selective Insurance Co.</u>, 311 N.J. Super. 210, 214 (App. Div. 1998), the principle that an insured may forfeit coverage by destroying an insurer's subrogation right applies with equal force to a claim for UM benefits.

> [W]e have no hesitancy in stating that the Supreme Court's rationale in . . . <u>Vassas</u>, . . . protecting a UIM insurers right of subrogation, applies equally to a situation, such as this, where a UM claimant has failed to give notice in a timely fashion. Indeed, the rationale protecting the subrogation rights of a UM insurer is even stronger than for a UIM insurer in light of the Legislature's specific recognition of that right in N.J.S.A. 17:28-1.1d.
>
> [<u>Ibid.</u> (citation omitted).]

A-0728-18T4

In Brown, the insurer's subrogation claim against the uninsured motorist was time-barred, as a result of his late notice.  Ibid.  The insured did not appeal from summary judgment denying his UM benefits.  Ibid.

DiMaria also misplaces reliance on Scheckel v. State Farm Mutual Automobile Insurance Co., 316 N.J. Super. 326 (App. Div. 1998).  In that case, late notice of an accident may have delayed or impaired the insurer's investigation, but did not absolutely bar a subrogation action, as here, on statute of limitations grounds.  Id. at 334-35.

Given our interpretation of Ferrante, we need not address whether DiMaria established a lack of prejudice, based on his contention that a subrogation action, if instituted at all, would have yielded little.  Nor do we address Travelers' contention that DiMaria significantly prejudiced its ability to ascertain who was at fault in causing the accident.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0728-18T4