711 A.2d 974

ANNE MARIE RIVERS, PLAINTIFF–APPELLANT, v. ALLSTATE
INSURANCE COMPANY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 12, 1998—Decided June 25, 1998.

Before Judges KEEFE, PAUL G. LEVY and WECKER.

*Robert A. Hedesh* argued the cause for appellant (*Juman, Juman & Hedesh*, attorneys; *Simon L. Kaufman*, on the brief).

*Anthony J. Accardi* argued the cause for respondent (*Litvak, Accardi & Trifiolis*, attorneys; *Michael C. Trifiolis*, of counsel and on the brief).

The opinion of the court was delivered by

KEEFE, J.A.D.

Plaintiff, Ann Marie Rivers, appeals from the entry of summary judgment in favor of defendant Allstate Insurance Company (Allstate). The judgment under review has the effect of denying plaintiff underinsured motorist (UIM) benefits under an Allstate Automobile Insurance Policy issued to plaintiff's husband.

The undisputed facts are as follows. Plaintiff was involved in an automobile accident on September 5, 1995. The alleged tortfea-

sor, Edward G. Krelein, was insured by Royal Insurance Company (Royal), who issued a policy to the alleged tortfeasor with bodily injury limits of $15,000/$30,000.

On June 23, 1996, plaintiff's attorney wrote a letter to Allstate stating that Royal would "in all likelihood" be offering the full single limit of its policy to settle plaintiff's claim. The letter expressed an intention to pursue a UIM claim and asked Allstate to respond whether it wanted its subrogation rights to be protected. There was no response to that letter.

On July 8, 1996, plaintiff executed a general release in favor of Edward G. Krelein releasing him from "any and all claims resulting from motor vehicle accident on or about September 5, 1995." The release was forwarded to Royal by letter dated July 10, 1996.

On September 9, 1996, plaintiff received a settlement check from Royal. On September 12, 1996, plaintiff's attorney forwarded what counsel describes as "a *Longworth* letter" to Allstate.[1]

Allstate responded to counsel's *Longworth* letter within thirty days. In its response, Allstate said it was unable to act upon plaintiff's request because it did not have proof of the tortfeasor's underinsurance and did not have a copy of the police report to evaluate liability. Further, Allstate indicated that it did not have access to plaintiff's PIP file and therefore asked for medical reports so that Allstate could evaluate plaintiff's claim. Lastly, Allstate requested a copy of the summons and complaint if suit had been filed against Krelein.

Apparently, between the receipt of the Allstate letter and October 25, 1996, plaintiff furnished the information requested by Allstate, including a copy of the release from Rivers to the Royal insured. On October 25, 1996, Allstate informed plaintiff's attorney that it was declining plaintiff's request for UIM benefits. In denying benefits to plaintiff, Allstate pointed out that plaintiff had given a general release to the Royal insured and "irrevocably

---

[1] *Longworth v. Van Houten,* 223 *N.J.Super.* 174, 538 A.2d 414 (App.Div.1988).

nullified [Allstate's] subrogation rights" before plaintiff even issued the *Longworth* letter of September 12.

When Allstate persisted in its refusal to honor plaintiff's request for UIM benefits or the appointment of an arbitrator, plaintiff filed a complaint and order to show cause against Allstate seeking a declaration of coverage for her UIM claim. The parties exchanged letter briefs. On the return day of the order to show cause, plaintiff essentially contended that the letter of June 23, 1996, from plaintiff's counsel to Allstate was a proper *Longworth* notice.[2] Plaintiff contended that, although she settled her claim with the Royal insured before the thirty day period expired, Allstate failed to reply to the June 23, 1996, notice within the thirty day period presumptively permitted by *Longworth*. Plaintiff relied on this court's opinion in *Breitenbach v. Motor Club of America Ins. Co.*, 295 *N.J.Super.* 328, 685 *A.2d* 36 (App.Div.1996).

Judge Longhi found as a matter of law that the June 23, 1996, letter from plaintiff's counsel to Allstate was not a proper *Longworth* notice, but that the September 12, 1996, was the type of notice contemplated by *Longworth*. Judge Longhi found that *Breitenbach* was distinguishable on the facts, and entered summary judgment in favor of Allstate. This appeal followed. We agree with Judge Longhi's conclusion and affirm.

The procedure by which insureds are to perfect claims for UIM benefits when a settlement has been offered by the tortfeasor in the underlying personal injury matter was first set forth by this court in *Longworth v. Van Houten, supra*. That procedure was "essentially endorse[d]" in *Rutgers Cas. Ins. Co. v. Vassas*, 139 *N.J.* 163, 174, 652 *A.2d* 162 (1995). By the time *Vassas* was decided, the Court observed that the *Longworth* procedure had been followed "almost universally by the bar and insurance industry." *Ibid.* (quoting Craig & Pomeroy, *N.J. Auto Insurance Law* § 28:3, at 332 (1994)).

---

[2] This claim was abandoned at oral argument before us.

In recognition of the well-established practice, the Court contemplated a three-step procedure to be followed "when an insured under an automobile insurance policy providing UIM benefits is involved in an accident and undertakes legal action against the tortfeasor." *Ibid.* In such instances, the insured should first notify the UIM insurer of the action.[3] *Ibid.* Secondly, "[i]f, during the pendency of the claim, the tortfeasor's insurance coverage proves insufficient to satisfy the insured's damages, then *the insured should again notify the UIM insurer* of that fact." *Ibid.* (emphasis in original). In our view, the letter from plaintiff's counsel to Allstate on June 23, 1995, constituted that notice. In that letter, plaintiff's counsel simply informed Allstate that he had determined that the Royal insured's coverage was insufficient to satisfy plaintiff's claim, and that he would seek UIM benefits from Allstate. At that point in time, Royal had not extended the $15,000 coverage available to satisfy plaintiff's claim. *Vassas* does not require the insurer to respond to this second notice.

■ The *Vassas* Court then articulated the third step in the procedure. It said:

> If the insured receives a settlement offer or arbitration award that does not completely satisfy the claim, because the tortfeasor is underinsured, the UIM insurer then has two options: offer to pay the insured the amount of the tortfeasor's settlement offer or the arbitration award, usually the tortfeasor's policy limit, in exchange for subrogation of the insured's rights against the tortfeasor; or, allow the insured to settle. In either case, the UIM insurer must further allow the insured the benefit of the UIM coverage. If the insured does not respond within the time allotted for rejection of the award or settlement offer, the insured victim may, consistent with *Longworth, supra,* move for a declaratory ruling on order to show cause concerning the parties' rights and responsibilities. In this manner, the insured victim is afforded the protection and benefits of the tortfeasor's insurance coverage in addition to the insured's own UIM coverage. As well, the UIM carrier is able to weigh the relative merits of allowing its insured to settle and paying the difference in UIM benefits compared with paying its insured the settlement offer plus UIM benefits and itself maintaining a subrogation action against the tortfeasor.

> [*Id.* at 174–75, 652 A.2d 162].

---

[3] In this case, it is not clear from the record whether any legal proceeding was instituted by plaintiff against Krelein.

It is this third procedure identified by the *Vassas* Court that constitutes the *Longworth* notice. *Id.* at 175, 538 *A.2d* 414.

■ It is, therefore, clear from the procedure outlined by the Supreme Court in *Vassas* that the language of plaintiff's letter of September 12, 1996, constituted what the Court envisioned as the *Longworth* notice. That letter is set forth herein in full.

This office represents the above named policyholder who was involved in an automobile accident on September 5, 1995. Mr. and Mrs. Rivers hold an uninsured/underinsured motorist endorsement on their policy with limits in the amount of $100,000 bodily injury each person, $300,000 bodily injury each accident and $50,000 property damage each accident.

The above accident has resulted in the tortfeasor offering the sum of $15,000 which represents the extent of "all available liability insurance pursuant to *N.J.S.A.* 17:28–1.1(e)." It is our intention to accept said amount in exchange for providing the tortfeasor with a general release.

We ask that you review *Longworth, et al. v. Ohio Casualty, et al.,* 223 *N.J.Super.* 174 [538 *A.2d* 414] (App.Div.1988) and choose among the following options with respect to the offer of settlement we have received as outlined above.

If you wish to have your potential rights of subrogation as the Underinsured Motorist carrier preserved, instruct us not to extend a general release to the tortfeasor for settlement in exchange for the policy limits. If you choose this option, we hereby demand payment in the amount of $285,000 at which point we will (a) assign ou[r] client's claim against the tortfeasor to you up to the limits of our client's Underinsured Motorist recovery; and (b) proceed to Underinsured Motorist Arbitration proceedings in the event we are unable to settle our client's pending Underinsured Motorist claim. If you do *not* wish to pursue subrogation, we will, as contemplated, extend the general release to the tortfeasor in exchange for settlement of all claims.

Please respond within 30 days from the date of this letter. If we fail to hear from you within that time period as to either (1) your decision; or (2) a request for additional time to evaluate the situation and your potential for subrogation, we will extend the general release and proceed with our client's Underinsured Motorist claim.

Had the facts set forth in the letter been true, the letter would have constituted an appropriate *Longworth* notice. That is so because the letter reports that the tortfeasor had offered the single limit of the tortfeasor's policy, that plaintiff intended to accept the offer, and that Allstate had the options made available

to insurers in *Longworth*, including the insured's representation that she would assign her claim against the tortfeasor if Allstate elected to follow that course. Finally, the letter informs Allstate that it had thirty days from the date of the letter to respond.

■ Allstate, unlike the insurer in *Breitenbach*, responded within the thirty day period and asked for information that it reasonably was entitled to have before making any decisions. That is, Allstate was entitled to determine for itself whether plaintiff was indeed a statutory underinsured and what the liability picture was in the event it desired to pursue subrogation. Further, Allstate needed more information about the tortfeasor so that it could do an asset check, a necessary inquiry before deciding what remedy it would follow under the *Longworth* procedure. The thirty day period, of course, is only a " 'presumptive time period.' " *Vassas, supra,* 139 *N.J.* at 173, 652 *A.*2d 162 (quoting *Longworth, supra,* 223 *N.J.Super.* at 194, 538 *A.*2d 414). Accordingly, there are circumstances in which the UIM insurer may not be able to make a final determination within thirty days of the *Longworth* notice, especially where the insured has failed to disclose the necessary information upon which the insurer must make a decision. *Longworth, supra,* 223 *N.J.Super.* at 194–95, 538 *A.*2d 414. Allstate made the reply required under the *Longworth* procedure in a timely fashion. Thus, under the *Breitenbach* rationale, plaintiff could not "demonstrate either consent or waiver" by Allstate to plaintiff's release of the tortfeasor. *Breitenbach, supra,* 295 *N.J.Super.* at 334, 685 *A.*2d 36.

The *Breitenbach* court would apparently also allow an insured relief if the insured was capable of proving "a lack of prejudice" to the insurer, even though the insurer's subrogation right had been extinguished by the release. *Ibid.* Presumably this means, by way of example, if an insured can demonstrate that the underinsured tortfeasor is assetless, and that it is improbable that an insurer would choose to subrogate against the tortfeasor, UIM benefits should not be withheld from the insured. This is another

way of saying that the insured's breach of the contract was not material under the circumstances.

■ We do not read the Supreme Court's opinion in *Vassas* to create a bright-line rule that the insured's failure to protect the insurer's right of subrogation amounts to prejudice *per se*, sufficient under all circumstances to deny the insured UIM benefits and excuse the insurer from its coverage obligation. As the *Vassas* Court recognized,

> Vassas *unfairly* prejudiced Rutgers's subrogation right against Vold, contrary to the requirements of his insurance policy. Vassas's failure to comply with those contractual provisions are sufficient to bar his UIM claim against Rutgers.

> [139 *N.J.* at 170, 652 *A.*2d 162 (emphasis added).]

The *Breitenbach* court gave an insured the opportunity to prove that his premature release of the insurer's subrogation rights caused the insurer no damage. That issue simply was not raised in *Vassas*, where the insured apparently did not contend that the tortfeasor's financial condition rendered subrogation worthless. *See also Green v. Selective Ins. Co. of America*, 144 *N.J.* 344, 356, 676 *A.*2d 1074 (1996) (emphasizing that in *Vassas*, the insured had "unfairly prejudiced Rutgers's subrogation rights"). The plaintiff in this case, although relying on the holding in *Breitenbach*, has simply failed to advance any facts demonstrating a lack of prejudice to Allstate.

Affirmed.