918 A.2d 729 (2007)
391 N.J. Super. 524
Michael HUTNICK, Plaintiff-Respondent,
v.
ARI MUTUAL INSURANCE COMPANY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 15, 2007.
Decided April 4, 2007.
*730 John J. Welch, Manasquan, argued the cause for appellant.
Jason E. Shamy, New Brunswick, argued the cause for respondent (Shamy, Shipers & Lonski, attorneys; Mr. Shamy, on the brief).
Before Judges LEFELT, PARRILLO and SAPP-PETERSON.
The opinion of the court was delivered by
PARRILLO, J.A.D.
Underinsured motorist (UIM) insurer, ARI Mutual Insurance Company (ARI or defendant), appeals from a December 13, 2005 order of the Law Division allowing the UIM claim of insured Michael Hutnick (plaintiff or Hutnick) to proceed to arbitration and rejecting ARI's contention that its insured's Longworth notification[1] was insufficient and therefore excused the insurer from UIM liability. We affirm.
The essential facts are not really in dispute. Plaintiff was injured in an automobile accident on July 2, 2004, while operating a van owned by his company and insured by ARI under a business auto policy with $500,000 in UIM coverage. The vehicle that hit plaintiff was insured by American International Companies (AIG) with policy limits of $15,000.
Plaintiff's policy, effective January 1, 2004, contained an endorsement providing:
2. With respect to damages resulting from an "accident" with an "underinsured motor vehicle", we will pay under this coverage only if a. or b. below applies:
a. The limit of any applicable liability bonds or policies have been exhausted by judgments or payments; or
b. A tentative settlement has been made between an "insured" and the insurer of an "underinsured motor vehicle" and we:
(1) Have been given prompt written notice of such tentative settlement; and
(2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.
Another section, entitled "Changes In Conditions" provides:
The Conditions are changed for Uninsured and Underinsured Motorists Coverage as follows:
....
2. Duties In The Event Of Accident, Claim, Suit Or Loss is changed by adding the following:
a. Promptly notify the police if a hit-and-run driver is involved; and
b. Promptly send us copies of the legal papers if a "suit" is brought.
c. A person seeking coverage under this endorsement must also promptly notify us, in writing, of a tentative settlement between the "insured" and the Insurer of an "underinsured motor vehicle", and allow us to advance payment to that "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".
Accordingly, plaintiff promptly advised ARI in writing on August 19, 2004 that the tortfeasor had a limited policy of $15,000 and therefore was "notifying [defendant] of an underinsured claim for injuries and damages sustained by [plaintiff]". The letter *731 requested that defendant "turn [the] matter over to [its] attorney and have [the] attorney select an arbitrator". In subsequent correspondence of September 7, 2004, plaintiff forwarded a copy of the police report to defendant, naming the identity and address of the tortfeasor, and later, by letter of October 20, 2004, plaintiff requested of Kristin Mayes, an employee of defendant, confirmation that plaintiff had UIM coverage of $500,000.
On October 26, 2004, plaintiff's counsel had a conversation with Mayes wherein he advised her of a written settlement offer from AIG dated the day before  October 25, 2004  offering plaintiff the tortfeasor's $15,000 policy limit.[2] This was confirmed by letter of October 27, 2004, formally advising defendant that AIG had offered plaintiff $15,000 conditioned upon receipt of medical bills and records, and enclosing AIG's letter of August 3, 2004, indicating that the liability limit was $15,000. The October 27, 2004 letter from plaintiff's counsel reads:
This will confirm our telephone conversation on October 26, 2004. I am advising you that the underinsured carrier has agreed to offer their limits of $15,000.00 upon receipt of medical bills and medical records.
Additionally, this is [sic] will acknowledge that you have confirmed that the UIM benefits is [sic] $500,000.00. Likewise, all medical bills must be paid by PIP. There is no provision for medical payment in either of the commercial policies.
I am enclosing herewith a letter from AIG Insurance Company dated August 3, 2004, indicating that the liability limit is $15,000.00.
After waiting thirty-three days from the transmission of the October 27, 2004 letter, and having received no response from ARI  neither any objection to settlement nor request for additional information or time  on November 29, 2004, plaintiff tendered a general release from liability to AIG's insured in exchange for $15,000.
Next, by letter of December 17, 2004 to ARI, plaintiff made a formal demand for arbitration, and reiterated that demand in a follow-up letter of February 17, 2005, enclosing an updated medical report. When ARI responded that it needed proof of the tortfeasor's limited policy and a complete medical package, plaintiff's counsel replied in a June 1, 2005 letter that the requested information had already been supplied and that if defendant did not name an arbitrator within fifteen days, plaintiff would file a declaratory judgment action to compel arbitration.
Receiving no response, on September 1, 2005, plaintiff filed an order to show cause and verified complaint seeking to compel defendant to arbitrate his claim for UIM benefits. Defendant cross-moved to dismiss, alleging that plaintiff failed to provide notice of his intent to accept the settlement offer, which prejudiced ARI's subrogation rights. Rejecting this argument, the Law Division, on December 13, 2005, ordered ARI to submit to arbitration. The judge concluded:
[Plaintiff counsel's] October 27, 2004 letter to defendant stated:
"I am advising you that the underinsured carrier has agreed to offer their *732 limits of $15,000 upon receipt of medical bills and medical records."
This statement, although it may be deemed ambiguous as it states a condition upon which the offer is contingent; however, it's the Court's position that the statement appears to provide sufficient notice to defendant.
On appeal, defendant reiterates the argument made below, namely that plaintiff's failure to provide written notification of its intent to accept AIG's settlement offer violated both the terms of the insurance contract (Condition (E)(2)(c)) and Longworth, and that ARI's subrogation rights were prejudiced by the release because an asset check of the tortfeasor had not previously been conducted. We disagree.
Preliminarily, we note that since the issues involve contract interpretation and the application of Longworth to the facts of this case, our standard of review is de novo. Fastenberg v. Prudential Ins. Co. of Am., 309 N.J.Super. 415, 420, 707 A.2d 209 (App.Div.1998); Young v. Prudential Ins. Co. of Am., 297 N.J.Super. 605, 621, 688 A.2d 1069 (App.Div.), certif. denied, 149 N.J. 408, 694 A.2d 193 (1997). As to the former, ARI's policy required that: "A person seeking coverage under this endorsement must also promptly notify us, in writing, of a tentative settlement between the `insured' and the Insurer of an `underinsured motor vehicle'". (emphasis added). This is consistent with the notification required by Longworth:
[U]ntil a definitive response comes from the Legislature, the Commissioner or the industry, that, as a matter of future conduct, an insured receiving an acceptable settlement offer from the tortfeasor should notify his UIM carrier. The carrier may then promptly offer its insured that sum in exchange for assignment to it by the insured of the claim against the tortfeasor. While promptness is to be ultimately determined by the circumstances, 30 days should be regarded as the presumptive time period if the insured notices his carrier prior to assignment of a trial date.
[223 N.J.Super. at 194-95, 538 A.2d 414.]
In Rutgers Cas. Ins. Co. v. Vassas, 139 N.J. 163, 652 A.2d 162 (1995), the Supreme Court expressly approved the procedure set forth in Longworth, finding that it "reflects a fair balance between the competing interests of the parties involved[,]" id. at 172, 652 A.2d 162, and has been followed "almost universally by the bar and insurance industry." Id. at 174, 652 A.2d 162 (quoting Craig & Pomeroy, New Jersey Insurance Law, § 28:3 (2005)). Not only did Vassas adopt Longworth, it also expounded upon Longworth's thirty-day time requirement, explaining that "Longworth merely established thirty days as a `presumptive time period' for notifying a UIM insurer of a settlement offer[,]'" id. at 173, 652 A.2d 162 (quoting Longworth, supra, 223 N.J.Super. at 194, 538 A.2d 414), and emphasizing "promptness [is] to be ultimately determined by the circumstances." Ibid.
As to the form of notification, our courts have since found that "[u]nder the Longworth procedure injured parties will generally preserve their UIM benefits by placing their own carriers on notice of proposed settlements with tortfeasors." Prudential Prop. & Cas. Co. v. Keystone Ins. Co., 286 N.J.Super. 73, 79, 668 A.2d 92 (Law Div.1995) (emphasis added). "[A]s the Supreme Court has pointed out, [this] has become the standard practice." Ibid. To this end, our courts have accepted notification by a "Longworth letter." See Rivers v. Allstate Ins. Co., 312 N.J.Super. 379, 711 A.2d 974 (App.Div.1998); Barrett v. N.J. Mfrs. Ins. Co., 295 N.J.Super. 613, 685 A.2d 975 (App.Div.1996), cert. denied, 150 N.J. 29, 695 A.2d 671 (1997); Prudential, *733 supra, 286 N.J.Super. 73, 668 A.2d 92. In Rivers, we specifically highlighted the significant information within the letter that would constitute appropriate Longworth, notice:
the letter reports that the tortfeasor had offered the single limit of the tortfeasor's policy, that plaintiff intended to accept the offer, and that [the insurer] had the options made available to insurers in Longworth, including the insured's representation that she would assign her claim against the tortfeasor if [her insurer] elected to follow that course. Finally, the letter informs [the insurer] that it had thirty days from the date of the letter to respond.
[312 N.J.Super. at 384-85, 711 A.2d 974.]
Vassas articulated the information that should generally be provided. Vassas, supra, 139 N.J. at 174, 652 A.2d 162. We summarized this information in Hallion v. Liberty Mut. Ins. Co., 337 N.J.Super. 360, 367-68, 766 A.2d 1224 (App.Div. 2001), stating:
The [Vassas] Court directed that when an insured under an insurance policy providing UIM benefits is involved in an accident, the insured must notify the insurer when suit is filed. Then while the claim is pending if it appears that the tortfeasor's insurance coverage will not satisfy the insured's damages, notice again should be given to the insurer. Thereafter, if the insured receives a settlement offer or an arbitration award that does not satisfy the insured's damages, then the insured should again notify the insurer of that fact.
[Ibid. (internal citations omitted).]
Ultimately, the burden to show lack of notice is on the carrier. Aetna Cas. & Surety Co. v. Farrell, 855 F.2d 146, 151 (3rd Cir.1988) (citing Cooper v. Gov't Employees Ins, Co., 51 N.J. 86, 237 A.2d 870 (1968)).
Here, we are satisfied that the letters of August 19, 2004, October 20, 2004 and October 27, 2004, read in combination and in the context of the circumstances known to defendant at the time, satisfied not only the terms of the insurance contract but Longworth requirements as well. The former only required prompt notice of a "tentative settlement", and the October 27th letter advising of AIG's settlement offer conditioned on receipt of medical records clearly suffices since a completed, fully worked-out or agreed upon settlement was not required. Moreover, the combination of all three letters put defendant on plain notice of: (1) the lawsuit filed against the tortfeasor; (2) the tortfeasor's limited policy of $15,000; (3) the fact that the tortfeasor's insurance would not satisfy plaintiff's damages for injuries sustained in the accident; (4) plaintiff's intent to pursue UIM benefits; and (5) AIG's settlement offer, which represented exhaustion of the tortfeasor's policy limits. Indeed, the fact that AIG extended the best offer possible was indicative of the likelihood that plaintiff would accept the offer. Significantly, for present purposes, the October 27th letter expressly stated that "the underinsured carrier has agreed to offer their [sic] limits" (emphasis added), strongly suggesting that negotiations took place between plaintiff and AIG wherein an agreement acceptable to each was reached between the two.
It is undisputed that ARI never gave any verbal  much less formal or written  response advising plaintiff not to settle with the tortfeasor. In fact, by the time plaintiff accepted AIG's offer on November 29, 2004, three months had passed since plaintiff's initial correspondence of August 19th, and thirty-three days had elapsed since the October 27th letter advising of the settlement offer and confirming plaintiff's UIM benefits amount. Significantly, *734 no response whatsoever was forthcoming from defendant to either the October 20th or October 27th correspondence from plaintiff's counsel. Indeed, it was not until February 17, 2005, after two formal demands for arbitration, that defendant finally responded and then only expressing a need for information which plaintiff claims had already been provided and in defendant's possession. Under the circumstances, we conclude that plaintiff adequately conveyed to ARI that an acceptable offer had been extended, which satisfied the contractual condition and substantially complied with Longworth's notification requirement.
Obviously, the preferred course would have been the transmittal of correspondence clearly expressing the insured's intent to accept the tortfeasor's offer of settlement. Such an unequivocal statement would have avoided the very question spawning this litigation and left no doubt as to fulfillment of plaintiff's Longworth obligation. It would also have set the date certain for the UIM carrier to have commenced its own evaluation of the magnitude of its insured victim's claim, the tortfeasor's negligence, and the prospect of further recovery from the tortfeasor himself in order to determine whether to consent to the settlement.
While exact compliance with Rivers, supra, is to be encouraged, we nevertheless find that the series of correspondence at issue here, given the surrounding circumstances, accomplishes the same result. We are further satisfied that defendant suffered no prejudice from any technical deficiency in notification. To be sure, a UIM insurer is "entitled to protection against any prejudice it reasonably may have suffered" as a result of the unauthorized settlement by the insured with the tortfeasor. CNA Ins. Cos. v. Cave, 332 N.J.Super. 185, 191, 753 A.2d 141 (App. Div.), certif. denied, 165 N.J. 678, 762 A.2d 659 (2000). Accordingly, the insured "is not . . . entitled to a windfall." Ibid. However, "[a] carrier may not deny a claim for UIM coverage on grounds of prejudice where its own acts caused or significantly contributed to the claimed prejudice." Kor v. Nat'l Consumers Ins. Co., 309 N.J.Super. 80, 87, 706 A.2d 776 (App.Div.), certif. denied, 156 N.J. 379, 718 A.2d 1208 (1998). Thus, our courts have refused to recognize per se prejudice to the UIM carrier where the plaintiff failed to adhere to the Longworth procedure, but the carrier also failed to act in accordance with Longworth. See CNA, supra, 332 N.J.Super. at 190, 753 A.2d 141 (holding that settling a case in violation of Longworth and Vassas is not a per se bar to UIM coverage and rejecting "an irrebuttable presumption of prejudice"); Breitenbach v. Motor Club of Am. Ins. Co., 295 N.J.Super. 328, 334-35, 685 A.2d 36 (App.Div. 1996) (holding that where the carrier failed to respond in writing within thirty days of receipt of plaintiff's notice, the carrier's subrogation rights were not compromised and did not constitute a per se bar to UIM coverage).
In Rivers, supra, we specifically noted: "We do not read the Supreme Court's opinion in [Vassas] to create a bright-line rule that the insured's failure to protect the insurer's right of subrogation amounts to prejudice per se, sufficient under all circumstances to deny the insured UIM benefits and excuse the insurer from its coverage obligation." Rivers, supra, 312 N.J.Super. at 386, 711 A.2d 974. Instead, we have held that a plaintiff who defaults on his obligations under Longworth must be allowed "to prove that his premature release of the insurer's subrogation rights caused the insurer no damage." Rivers, supra, 312 N.J.Super. at 386, 711 A.2d 974 (internal citation omitted). The Rivers court read Breitenbach *735 to "allow an insured relief if the insured was capable of proving a lack of prejudice to the insurer, even though the insurer's subrogation right had been extinguished by the release." Id. at 385, 711 A.2d 974 (internal citation omitted).
In this regard, defendant argues that by executing the release before notifying defendant of its intent to accept AIG's offer, and before defendant commenced an asset check of the tortfeasor, plaintiff prejudiced defendant's subrogation rights. We have already held that plaintiff's written correspondence advised defendant of the settlement offer and effectively notified defendant of its acceptability. Equally important, defendant was in possession of information on which a claims investigation could have commenced as early as September 7, 2004, when it received the police report listing the tortfeasor's name and address. Moreover, defendant was in possession of medical records detailing the extent of plaintiff's injuries. And defendant itself acknowledges being advised as early as October 26th that the tortfeasor's limited policy had been offered to plaintiff, and that this fact was confirmed in written correspondence on October 27th to the effect that AIG "has agreed" to the offer. Yet, despite all this information, defendant made no attempt to conduct an asset check or any meaningful type of claims investigation from August 19, 2004 to November 29, 2004. Plaintiff, on the other hand, acted in compliance with Longworth by waiting the presumptive thirty-day period once it wrote to defendant on October 27th revealing the settlement offer. Still, no action was taken by defendant.
In Breitenbach, the plaintiff gave his UIM insurer notice of an intent to settle for the tortfeasor's policy limits and advised that unless the insurer objected within thirty days, he would accept the settlement and submit the UIM claim to the insurer. Breitenbach, supra, 295 N.J.Super. at 330, 685 A.2d 36. Prior to the expiration of the thirty-day period, plaintiff completed the settlement with the tortfeasor. Thereafter, the insurer refused to pay UIM benefits. Ibid. In the subsequent action by the insured against the UIM insurer, the motion judge dismissed the complaint, finding that plaintiff's failure to wait thirty days before settling with the tortfeasor irreparably prejudiced the UIM insurer's subrogation rights. We reversed, finding no prejudice to the UIM insurer, and explaining:
While plaintiff settled with the tortfeasor within the thirty days, defendant never delivered a response within that period, either objecting to the settlement or offering to pay the settlement proceeds. Having not responded in writing within thirty days of receipt of plaintiff's notice, the carrier's right of subrogation cannot be deemed to have been compromised.
[Id. at 335, 685 A.2d 36.]
We are persuaded that ARI's dilatory conduct in this instance should fare no better.
Affirmed.
NOTES
[1] Longworth v. Ohio Casualty Group, 223 N.J.Super. 174, 538 A.2d 414 (App.Div.1988).
[2] That much is undisputed. Plaintiff's counsel certifies that he further advised Mayes of plaintiff's intent to accept the offer absent timely objection from defendant and that his subsequent October 27, 2004 letter would confirm the same. Mayes, on the other hand, has certified that plaintiff's counsel did not express plaintiff's intent to accept the offer absent timely objection.