**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4975-16T1

GUISEPE A. IELLIMO a/k/a
JOSEPH IELLIMO and
BARBARA IELLIMO, his wife,

     Plaintiffs-Appellants,

v.

AMICA MUTUAL INSURANCE
COMPANY,

     Defendant-Respondent.

_____

Argued October 18, 2018 – Decided December 21, 2018

Before Judges O'Connor and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3123-16.

Nabil N. Kassem argued the cause for appellants (Kassem & Associates, PC, attorneys; Nabil N. Kassem and Dominique J. Carroll, on the brief).

Steven M. Pardalis argued the cause for respondent (Smith Mazure Director Wilkins Young & Yagerman, PC, attorneys; Steven M. Pardalis, on the brief).

PER CURIAM

Plaintiffs Guisepe A. Iellimo (Iellimo) and Barbara Iellimo appeal from the June 8, 2017 order of the Law Division granting summary judgment in favor of defendant Amica Mutual Insurance Company (Amica) on plaintiffs' claims for underinsured motorist (UIM) coverage. We affirm.

I.

On December 1, 2012, Iellimo, while walking in Manhattan, was struck and injured by a motor vehicle owned and operated by Saul Casiano. On the date of the incident, Casiano's vehicle was insured by GEICO Insurance Company (GEICO) under a policy with a liability limit of $25,000. Iellimo was insured under an automobile policy issued by Amica with UIM coverage with a limit of $250,000.

In 2015, Iellimo initiated a legal action against Casiano in New York Supreme Court for damages resulting from the accident. There is no evidence in the record that Iellimo's counsel notified Amica of the New York action.

On January 11, 2016, Iellimo executed a release of all of his claims arising from the December 1, 2012 accident against Casiano in exchange for Casiano's policy limit of $25,000. On that date, Iellimo's counsel sent the signed release to GEICO with a signed stipulation of dismissal of the New York action. The

A-4975-16T1

letter requested that a representative of Casiano sign the release and file the stipulation. Iellimo's counsel also stated, "[t]hank you in advance for promptly forwarding the settlement check made payable to this firm and Mr. Guisepe A. Iellimo."

The following day, January 12, 2016, Iellimo's counsel sent a letter to Amica. The letter provides, in relevant part:

> As you are aware, this firm represents the claimant, Mr. Guisepe (a.k.a. Joseph) A. Iellimo, for personal injuries he sustained in the December 1, 2012 motor vehicle accident. By way of this letter, I am hereby putting you on notice of my client's intent to immediately file an Underinsured Motorist Claim in this matter. This is due to the fact that Mr. Iellimo was involved in an accident with a motor vehicle that was insured by GEICO Insurance Company, which policy has limited bodily injury coverage.
>
> Accordingly, I would request that upon receipt of the within correspondence that you kindly acknowledge this UIM Claim.

The January 12, 2016 letter does not alert Amica that the prior day Iellimo released Casiano from all claims arising from the December 1, 2012 accident in exchange for $25,000, or that Iellimo had filed a complaint against Casiano in New York Supreme Court, and had signed a stipulation of dismissal in that action. On January 19, 2016, GEICO issued a settlement check to Iellimo and his counsel for $25,000.

A-4975-16T1

On January 22, 2016, Iellimo's counsel again wrote to Amica. Counsel stated that "Mr. Casiano's carrier has tendered their policy limit to Mr. Iellimo in settlement of his claims. Additionally, enclosed for your review is their January 13, 2016 correspondence offering their policy limit of $25,000.00. In light of the above, I would ask that you review <u>Longworth et al. v. Ohio Casualty, et al.</u>[,] 223[] N.J. Super. 174 (App. Div. 1988)." The January 13, 2016 correspondence referenced in counsel's letter is not included in the record. It is not possible, therefore, for us to review the letter to determine why a GEICO representative would write a letter offering to settle Iellimo's claims two days <u>after</u> Iellimo had executed a release in favor of Casiano and a stipulation of dismissal of the pending New York action.

The omission of a copy of the January 13, 2016 letter is troubling in light of the following statement in the January 22, 2016 letter:

> Please allow this letter to serve as formal notice that it is our client's intention to accept the tendered policy limit of $25,000.00 under the policy of the tortfeasor in full and final settlement of any and all claims against the tortfeasor. If, however, you should desire to protect your subrogation interests, please be advised that our client will assign their claim against Saul Casiano to your company in exchange for payment of the settlement offer of $25,000.00. It is our client's intention to accept this offer any time after thirty (30) days from the date of this correspondence. If your company intends to pay the policy limits and accept an

> assignment of Mr. Guisepe A. Iellimo's claim against Saul Casiano, you should notify our offices, in writing, within that thirty (30) day period. In the absence of any such notice, the settlement from GEICO Indemnity Company will be accepted as indicated above.

These statements are obviously false. As of January 22, 2016, Iellimo had already accepted $25,000 as a settlement from GEICO. He had executed a release in favor of Casiano with respect to all claims arising from the December 1, 2012 accident, and his counsel had signed a stipulation of dismissal of the New York action. In addition, GEICO had already issued a $25,000 settlement check to Iellimo and his counsel. Thus, the offer by Iellimo's counsel to assign Amica his client's claims against Casiano in the event that Amica elected to pursue its subrogation claim was illusory. Counsel's reference to the January 13, 2016 letter appears to be designed to create the impression that a settlement offer from GEICO was pending at the time of the January 22, 2016 letter when, in fact, the settlement had already been completed.

On February 11, 2016, Amica acknowledged in writing having received the January 22, 2016 letter. Amica stated that "[b]efore we are able to make a decision with regard to our subrogation rights, we require the following information." Amica requested a copy of the GEICO declarations page for Casiano's policy, a copy of the complaint filed against Casiano "protecting the

statute of limitations" and an "affidavit of available assets from Saul Casiano, as it appears from our initial investigation that he owns a rental income generating property."

On February 18, 2016, Amica again wrote to Iellimo's counsel. The letter provided:

> In the process of investigating the assets of the tortfeasor in this matter, Saul Casiano, we have determined that he appears to reside in and own a multi-unit property which we assume generates rental income. As such, it appears he may have assets with which he could contribute something toward settlement of this claim.
>
> However, in speaking with GEICO, Mr. Casiano's insurer, we have been advised that your client has executed a release against Mr. Casiano, and extinguished any and all claims. We believe that doing so may have prejudiced our right of subrogation against Mr. Casiano. Also, your Longworth letter is void, as Longworth provides us with 30 days to investigate assets and either tender on behalf of the tortfeasor policy, or waive our rights. We are unable to do either of those options as you have already released the tortfeasor from any further involvement in this matter.

On April 21, 2016, Iellimo and his spouse filed a complaint in the Law Division against Amica seeking UIM benefits for Iellimo's injuries from the December 2, 2012 accident. On October 20, 2016, Amica moved for summary judgment. The trial court denied Amica's motion without prejudice on

December 2, 2016. The court gave plaintiffs' counsel sixty days to conduct discovery on the question of whether Amica was prejudiced by Iellimo's failure to provide notice prior to settling his claims against Casiano.

Following the close of discovery, Amica again moved for summary judgment. At oral argument on the motion, plaintiffs' counsel admitted a failure to comply with the procedures established in Longworth. The parties agreed that the only issue before the court was whether the failure to comply with Longworth prejudiced Amica. The court, therefore, examined only whether Casiano had assets available to compensate Amica in the event it paid Iellimo UIM benefits.

In its bench opinion, the court found that plaintiffs' "former counsel lied [when he] sent a notice saying we're thinking about accepting this after their release had already been signed in an attempt retroactively to create a Longworth record to support the U.I.M. claim." However, noting precedents permitting an insured who failed to comply with Longworth to pursue UIM benefits in some circumstances, the court held that "the burden of proof is on the plaintiff who did [not] give the proper notice to demonstrate the lack of prejudice" to the carrier. Having reviewed evidence of Casiano's income, car, and income-producing, multi-unit home, the court held that it was "not satisfied that the

plaintiff has shown a lack of prejudice."  The trial court, therefore, granted Amica's motion in a June 8, 2017 order.  This appeal followed.

II.

We review the trial court's decision granting summary judgment de novo, using "the same standard that governs trial courts in reviewing summary judgment orders."  Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998).  Rule 4:46-2 provides that a court should grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  "Thus, the movant must show that there does not exist a 'genuine issue' as to a material fact and not simply one 'of an insubstantial nature'; a non-movant will be unsuccessful 'merely by pointing to any fact in dispute.'"  Prudential, 307 N.J. Super. at 167 (quotation omitted).

Self-serving assertions that are unsupported by evidence are insufficient to create a genuine issue of material fact.  Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015).  "Competent opposition requires 'competent evidential material' beyond mere 'speculation'

and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quotations omitted). We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523-24 (1995).

The relationship between an insured and an insurance carrier is contractual. The obligation to offer UIM coverage, however, is statutory. Zirger v. General Accident Ins. Co., 144 N.J. 327, 333 (1996). Insurance carriers are required to offer each insured the option of purchasing coverage up to the limits of liability coverage, but not exceeding $250,000 per person and $500,000 per accident against the risk of injury caused by underinsured tortfeasors. N.J.S.A. 17:28-1.1(b). An individual against whom recovery is sought after an accident is considered "underinsured" when his or liability limits are "at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery." N.J.S.A. 17:28-1.1(e)(1).

A UIM carrier who pays benefits to an insured has the right to subrogate the insured's claim against the tortfeasor to permit the carrier to recover from the tortfeasor the UIM benefits paid to its insured. To effectuate this right, a

UIM carrier may intervene in an insured's trial against a tortfeasor as a way to avoid relitigating the insured's claim, and to bind the tortfeasor to the issues decided at trial. Zirger, 144 N.J. at 340-42.

In Longworth, we held that, in order to protect the UIM carrier's subrogation interest

> an insured receiving an acceptable settlement offer from the tortfeasor should notify his UIM carrier. The carrier may then promptly offer its insured that sum in exchange for assignment to it by the insured of the claim against the tortfeasor. While promptness is to be ultimately determined by the circumstances, [thirty] days should be regarded as the presumptive time period if the insured notices his carrier prior to assignment of a trial date.

> [223 N.J. Super. at 194.]

Our Supreme Court endorsed this approach, holding that there are three notices that an insured must give to a UIM carrier. Rutgers Cas. Ins. Co. v. Vassas, 139 N.J. 163, 174 (1995). First, the insured must notify the carrier when the insured commences a legal action against the tortfeasor. Ibid. Second, the insured must advise the carrier when he determines the tortfeasor's insurance coverage is insufficient to compensate the insured for his injuries. Ibid. Third, the insured must notify the insurer of any settlement offer or arbitration award

A-4975-16T1

that does not satisfy the insured's damages. Id. at 174-75. This is commonly known as a Longworth notice.

We addressed the consequences of the insured's failure to follow the holding in Vassas in several cases. In Breitenbach v. Motor Club of Am. Ins. Co., 295 N.J. Super. 328 (App. Div. 1996), we held that an insured who accepted a settlement offer after informing his UIM carrier of the offer, but before he received permission from the UIM carrier to do so and before the thirty-day period had expired, was not necessarily precluded from receiving UIM benefits. Id. at 332-34. We reasoned that the carrier's failure to object to the settlement in the thirty-day period, even though the settlement had already been accepted, effectively extinguished its right to subrogation. Id. at 335.

In Rivers v. Allstate Ins. Co., 312 N.J. Super. 379, 381 (App. Div. 1998), an insured informed her UIM carrier of a suit she filed against a tortfeasor, and the likelihood that the tortfeasor's insurance coverage would be inadequate to cover her damages. This satisfied the first two notice requirements established in Vassas. Id. at 383-84. The insured, however, settled her suit against the tortfeasor without sending her UIM carrier a Longworth notice, or securing the carrier's permission to do so. Id. at 381, 384-84. The insured sent a letter to the carrier after executing a general release in favor of the tortfeasor. Id. at 381.

11

The letter falsely stated that the tortfeasor had offered to settle the matter and that it was the insured's "intention" to accept the settlement, when insured had already signed the release and received the settlement proceeds. Id. at 384. In addition, the letter stated that if the carrier elected to preserve its subrogation rights, the insured would refrain from signing the release, and assign her rights to recover from the tortfeasor to the UIM carrier. Ibid. This promise was misleading, as the insured had already released all of her claims.

The carrier responded within thirty days of the notice, requesting more information before it could decide whether to exercise its rights to subrogation. Id. at 385. The carrier later denied UIM coverage, having discovered that the insured had released her claims prior to the Longworth notice. Id. at 381.

When determining whether the insured was precluded from recovering UIM benefits, we explained that

> [t]he Breitenbach court would apparently also allow an insured relief if the insured was capable of proving "a lack of prejudice" to the insurer, even though the insurer's subrogation right had been extinguished by the release. [295 N.J. Super. at 334]. Presumably, this means, by way of example, if an insured can demonstrate that the underinsured tortfeasor is assetless, and that it is improbable that an insurer would choose to subrogate against the tortfeasor, UIM benefits should not be withheld from the insured.
> . . . .

12

> We do not read the Supreme Court's opinion in <u>Vassas</u> to create a bright-line rule that the insured's failure to protect the insurer's right of subrogation amounts to prejudice <u>per se</u>, sufficient under all circumstances to deny the insured UIM benefits and excuse the insurer from its coverage obligation.
>
> [<u>Id.</u> at 385-86.]

Because the insured "failed to advance any facts demonstrating a lack of prejudice to" the UIM carrier, we affirmed the trial court order dismissing the insured's claim for UIM benefits. <u>Rivers</u>, 312 N.J. Super. at 386; <u>accord</u> <u>CNA Ins. Cos. v. Cave</u>, 332 N.J. Super. 185, 186-88 (App. Div. 2000) (holding an insured's release of claims against one of two alleged tortfeasors with no notice to the UIM carrier is not <u>per se</u> preclusive of a claim for UIM benefits where it was not clear that the released party was actually liable for the insured's injuries). It was under this line of precedents that the trial court resolved Amica's summary judgment motion.

After the trial court's decision, the Supreme Court issued its opinion in <u>Ferrante v. N.J. Mfrs. Ins. Grp.</u>, 232 N.J. 460 (2018). In that case, the insured plaintiff was injured by an underinsured tortfeasor. Without informing his UIM carrier, the insured initiated a negligence action against the tortfeasor, who was insured with a limit of $100,000. <u>Id.</u> at 464. The insured entered into a high-low agreement with the tortfeasor with a floor of $25,000 and a ceiling of

A-4975-16T1

$100,000, and proceeded to trial.  Ibid.  A jury found the tortfeasor liable and awarded $250,000 in damages.  Because of the high-low agreement, the court entered a judgment for $100,000.  Id. at 465.

The day after the judgment was entered, the insured's counsel sent the UIM carrier a letter falsely stating that the tortfeasor "tendered the policy limits of $100,000 in exchange for execution of a Release in favor of the tortfeasor" and requesting that the carrier consent to settle on those terms.  The letter did not mention the suit the insured had filed, the high-low agreement, the trial, or the verdict.  Ibid.

The carrier, having conducted an investigation into the tortfeasor's assets, authorized the "settlement" described in counsel's letter.  Ibid.  Three years later, the insured informed the carrier about the $250,000 judgment in the suit against the tortfeasor.  The insured's counsel later informed the carrier of the high-low agreement.  Ibid.  The carrier subsequently filed suit to bar the insured's claims for UIM benefits, arguing that the insured had improperly waived the carrier's subrogation rights, and failed to comply with the notice requirements established by the Supreme Court.  Id. at 465-66.

The trial court ultimately agreed with the carrier, granting its motion in limine for dismissal.  We reversed and our majority panel remanded the matter

14

to the trial court for it to consider whether the carrier had been prejudiced by plaintiff's failure to provide it with a timely <u>Longworth</u> notice. The dissenting member of our panel disagreed, asserting that the carrier need not demonstrate prejudice where the insured failed to provide notice of the suit against the tortfeasor, the high-low agreement, and the trial verdict, causing an irretrievable loss of the carrier's subrogation rights. Because of the dissent, the carrier filed an appeal as of right pursuant to <u>Rule</u> 2:2-1(a)(2).

The Supreme Court reversed our judgment and reinstated the trial court's order of dismissal. The Court rejected our majority panel's holding that the insured was required to show the carrier was prejudiced before the insured's UIM claim could be barred. <u>Id.</u> at 466-67. The Court began its analysis by noting that

> [o]ur case law has routinely emphasized the importance of candor by insureds and the obligation to act in a forthright, open, and honest manner with their carriers throughout the entire process of their claim. <u>See</u> <u>Longobardi v. Chubb Ins. Co. of N.J.</u>, 121 N.J. 530, 539 (1990) ("[A]n insured's commitment not to misrepresent material facts extends beyond the inception of the policy to a post-loss investigation.")[.] We have provided insureds "an incentive to tell the truth. It would dilute that incentive to allow an insured to gamble that a lie will turn out to be unimportant." <u>Id.</u> at 541-42. Although this case arises in a different context, we seek to avoid rewarding insureds for omitting key details in a UIM claim.

A-4975-16T1

[Id. at 468-69.]

After reviewing the precedents concerning the duties of an insured to keep a UIM carrier apprised of potential claims, the Court concluded that Ferrante's UIM claim was barred

> [d]espite Ferrante's efforts to distinguish his case from Vassas, we find Vassas precludes him from recovering UIM benefits. Like in Vassas, where the insured initiated a lawsuit and received an arbitration award without informing the carrier, Ferrante did the same. He further violated his duty to inform [his UIM carrier] by entering into a high-low agreement and taking the matter through a full jury trial without informing [his UIM carrier.]

> [Id. at 473.]

The Court also held that

> the cited Appellate Division cases are distinguishable due to the numerous times Ferrante failed to inform [his UIM carrier]. In Breitenbach and Rivers, the insured informed the carrier during litigation, and both cases dealt more with at which point, if any, it was appropriate for the insured to accept the settlement offer without the carrier's consent. Here, we never reach that point because Ferrante did not inform [his UIM carrier] of the litigation until more than two years after it was initiated and actually completed. Similarly, this case did not involve a day-of-trial settlement or include multiple tortfeasors, as in Cave; here, the single tortfeasor was well known, and [the UIM carrier] was still kept in the dark throughout.

16

[Id. at 473-74.]

The Court also rejected the argument that a negligent, rather than intentional, violation of Longworth warranted a prejudice analysis. Id. at 474. The Court instead adopted the following approach:

> If . . . the insured, regardless of his state of mind, fails to give the UIM carrier any notice of the UIM claim until after the final resolution of the underlying tort action, thereby causing the irretrievable loss of the carrier's rights to subrogation and intervention before the carrier has ever learned of the existence of the claim, coverage is forfeited.
>
> [Ibid. (quotations omitted).]

After a careful review of the record, we conclude that the holding in Ferrante precludes plaintiffs' claim for UIM benefits from Amica. The record contains no evidence that Iellimo's counsel notified Amica of the filing of the New York Supreme Court action against Casiano. In addition, it is undisputed that Iellimo's counsel accepted a settlement offer from Casiano, submitted an executed release of all of Iellimo's claims against Casiano, and signed a stipulation of dismissal of the New York action without notifying Amica. By doing so, he caused the irretrievable loss of Amica's subrogation rights.

In addition, after having released all of Iellimo's claims against Casiano, plaintiffs' counsel sent a letter to Amica falsely claiming that his client was

17

considering a settlement offer from Casiano, and offering to assign his client's claims against Casiano to Amica should the carrier elect to exercise its rights to subrogation. That offer was misleading, at best, given counsel's knowledge that Iellimo had already signed a release in favor of Casiano. Moreover, counsel enclosed with his correspondence to Amica what he described as a letter dated January 13, 2016, containing a settlement offer from Iellimo's carrier. As noted above, the January 13, 2016 letter is not included in the record in this appeal.

What is clear from the record, however, is that Iellimo's counsel failed to comply with the procedures set forth in Longworth and Vassas, and, like the counsel in Ferrante, caused the UIM carrier to lose its subrogation rights. The fact that counsel thereafter sent misleading correspondence to Amica only exacerbated the situation. Iellimo's counsel, in fact, never notified Amica of the settlement of his client's claims against Casiano. The carrier was informed of the settlement by Casiano's insurance carrier. As a result, as held in Ferrante, plaintiffs' UIM claim is barred, and a showing by plaintiffs that Amica was not prejudiced by the settlement of Iellimo's claims will not salvage his UIM claim.

We have considered the remaining arguments raised on appeal, and conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4975-16T1