**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4319-19

DOMENICO MASUCCI,

    Plaintiff-Appellant,

v.

NEW JERSEY
MANUFACTURERS
INSURANCE COMPANY,

    Defendant-Respondent.

_____

Submitted April 28, 2021 – Decided May 17, 2021

Before Judges Rose and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0364-20.

Drazin & Warshaw, attorneys for appellant (Christopher R. Brown, on the brief).

Dyer & Peterson, PC, attorneys for respondent (Glenn T. Dyer, on the brief).

PER CURIAM

Plaintiff Domenico Masucci appeals from a July 24, 2020 order entering summary judgment in favor of defendant New Jersey Manufacturers Insurance Company (NJM) on plaintiff's claim for underinsured motorist (UIM) coverage. We affirm.

I.

We derive the following facts from the summary judgment motion record viewed in the light most favorable to plaintiff. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). On November 20, 2016, plaintiff sustained personal injuries after being struck by a vehicle operated by Peter Smith in South Amboy. At the time of the accident, plaintiff was insured under a motor vehicle policy issued by NJM.

In October 2017, plaintiff filed a complaint against Smith in the Law Division for damages resulting from the accident. There is no evidence in the record that plaintiff or his counsel notified NJM of the action. In May 2018, plaintiff was informed that Smith was insured under a Plymouth Rock automobile liability policy with a liability limit of $250,000. Plaintiff had a $500,000 combined single UIM coverage limit with NJM in effect at the time of the accident. Admittedly, plaintiff failed to notify NJM that Smith's $250,000 liability coverage limit was insufficient to satisfy his claim for damages.

A-4319-19

On October 28, 2019, plaintiff executed a release of all his claims arising from the accident against Smith in the sum of $240,000.[1]  The release contained a provision stating: "In further consideration of the above described payment, I/we release and forever discharge the Releasee(s) against any indemnity or contribution claims that have been or may be brought by any person, firm or corporation which may arise out of the above referenced accident or occurrence."  It is undisputed that plaintiff failed to comply with our mandate espoused in <u>Longworth v. Van Houten</u>, 223 N.J. Super. 174 (App. Div. 1988) and did not notify NJM regarding the settlement with Smith or his intention to pursue UIM coverage with NJM.  On November 26, 2019, a stipulation of dismissal with prejudice was filed with the clerk of the court against Smith.

On December 12, 2019, plaintiff's counsel sent a demand letter to an NJM Personal Injury Protection (PIP) benefits claims representative enclosing plaintiff's medical records, Smith's answers to interrogatories, and stating: "As discussed previously, kindly forward my letter with attachments to a UIM adjuster so that a UIM claim can be set up and have the adjuster handling this

---

[1]  The fact that plaintiff settled with Smith for less than his full $250,000 policy limit is irrelevant to our analysis.

A-4319-19

matter contact [me]. You hereby have my permission for the UIM adjuster to review all medical records in your file."

In response, on January 13, 2020, counsel for NJM sent a letter to plaintiff's counsel advising:

> In accordance with <u>Longworth v. Van Houten</u>, 223 N.J. Super. 174 (App. Div. 1988), Mr. Masucci was required to notify NJM as the underinsured motorist carrier that he received a settlement offer which he intended to accept. Generally, this notification provides the underinsured motorist carrier 30 days to make a determination with regards to its subrogation rights against the tortfeasor. <u>Mr. Masucci has failed to provide NJM with the required notice pursuant to Longworth.</u>
>
> Additionally, under the underinsured motorist provisions of Mr. Masucci's policy, we specifically do not provide coverage for property damage or bodily injury sustained by an insured, if that insured or the legal representative settles any bodily injury or property damage claim with the owner or operator of an underinsured motor vehicle without our written consent. It is my understanding that prior to your December 12, 2019 letter requesting that a UIM claim be established, an underlying settlement was finalized without NJM's written consent and a general release was executed by your client and returned to the tort carrier, Plymouth Rock, effectively extinguishing NJM's subrogation rights. As such, NJM is denying your client's claim for U[I]M benefits.

On January 30, 2020, plaintiff's counsel filed a complaint for declaratory judgment against NJM seeking UIM benefits. NJM filed an answer noting the

4 <span></span>

request for UIM benefits "was not made until after plaintiff consummated a settlement with the parties allegedly responsible [f]or his loss and without this party's knowledge or consent" thereby extinguishing NJM's right of subrogation. NJM also asserted that plaintiff's claim was barred by N.J.S.A. 17:28-1.1 and relevant case law.

Thereafter, NJM filed a motion for summary judgment seeking dismissal of the declaratory judgment action. Plaintiff opposed the motion. On July 24, 2020, the trial court heard oral argument on NJM's motion and reserved decision. Later that day, the court issued a cogent statement of reasons granting NJM's motion for summary judgment and dismissing plaintiff's complaint. Based upon the undisputed facts of record, the trial court concluded that plaintiff violated his duty to inform NJM of a potential UIM claim as required by Longworth and as required by his insurance contract.

Under Ferrante v. New Jersey Mfrs. Ins. Grp., 232 N.J. 460, 473-74 (2018), the trial court emphasized that our Supreme Court "rejected the argument that a negligent, rather than intentional, violation of Longworth warranted a prejudice analysis." Citing Ferrante, the trial court explained:

> If . . . the insured, regardless of his state of mind, fails to give the UIM carrier any notice of the UIM claim until after the final resolution of the underlying tort action, thereby causing the irretrievable loss of the

carrier's rights to subrogation and intervention before the carrier has ever learned of the existence of the claim, coverage is forfeited.

[Ibid.] (quotations omitted).

The trial court held under [Ferrante], plaintiff's UIM claim was barred. In addition, the trial court found plaintiff materially breached his insurance contract with NJM. A memorializing order was entered. This appeal followed.

On appeal, plaintiff contends the trial court erred in granting summary judgment to NJM since NJM was not prejudiced by settlement of the underlying claim without its consent.

## II.

Our review of an order granting summary judgment is de novo. [Henry v. N.J. Dep't of Human Servs.], 204 N.J. 320, 330 (2010). We discern no genuine issue of material fact, and conclude, as did the trial court, that NJM is entitled to judgment as a matter of law. [See Brill v. Guardian Life Ins. Co. of Am.], 142 N.J. 520, 528-29 (1995) (setting forth summary judgment standard under [R.] 4:46-2).

On appeal, plaintiff argues the failure to request [Longworth] approval of the settlement offer constituted negligence on the part of his counsel and not a "strategic decision" or an attempt to "mislead" NJM. Plaintiff further asserts

that his preliminary investigation of Smith's assets revealed he lacked sufficient funds to provide subrogation to NJM, and therefore, NJM was not prejudiced by plaintiff's breach of his insurance contract. We are unpersuaded by plaintiff's arguments.

The relationship between an insured and an insurance carrier is contractual. The obligation to offer UIM coverage, however, is statutory. Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 333 (1996). Insurance carriers are required to offer each insured the option of purchasing coverage up to the limits of liability coverage, but not exceeding $250,000 per person and $500,000 per accident against the risk of injury caused by underinsured tortfeasors. N.J.S.A. 17:28-1.1(b). An individual against whom recovery is sought after an accident is considered "underinsured" when his or her liability limits are "at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery." N.J.S.A. 17:28-1.1(e)(1).

A UIM carrier who pays benefits to an insured has the right to subrogate the insured's claim against the tortfeasor to permit the carrier to recover from the tortfeasor the UIM benefits paid to its insured. To effectuate this right, a UIM carrier may intervene in an insured's trial against a tortfeasor as a way to

avoid relitigating the insured's claim, and to bind the tortfeasor to the issues decided at trial. Zirger, 144 N.J. at 340-42.

In Longworth, we held that, in order to protect the UIM carrier's subrogation interest:

> [A]n insured receiving an acceptable settlement offer from the tortfeasor should notify his UIM carrier. The carrier may then promptly offer its insured that sum in exchange for assignment to it by the insured of the claim against the tortfeasor. While promptness is to be ultimately determined by the circumstances, [thirty] days should be regarded as the presumptive time period if the insured notices his carrier prior to assignment of a trial date.
>
> [223 N.J. Super. at 194.]

Our Supreme Court endorsed this approach, holding that there are three notices that an insured must give to a UIM carrier. Rutgers Cas. Ins. Co. v. Vassas, 139 N.J. 163, 169 (1995). First, the insured must notify the carrier when the insured commences a legal action against the tortfeasor. Ibid. Second, the insured must advise the carrier when he determines the tortfeasor's insurance coverage is insufficient to compensate the insured for his injuries. Ibid. Third, the insured must notify the insurer of any settlement offer or arbitration award that does not satisfy the insured's damages. Id. at 174-75. This is commonly known as a Longworth notice.

We addressed the consequences of the insured's failure to follow the holding in Vassas in several cases. In Breitenbach v. Motor Club of America Ins. Co., 295 N.J. Super. 328 (App. Div. 1996), we held that an insured who accepted a settlement offer after informing his UIM carrier of the offer, but before he received permission from the UIM carrier to do so and before the thirty-day period had expired, was not necessarily precluded from receiving UIM benefits. Id. at 332-34. We reasoned that the carrier's failure to object to the settlement in the thirty-day period, even though the settlement had already been accepted, effectively extinguished its right to subrogation. Id. at 335.

In Rivers v. Allstate Ins. Co., 312 N.J. Super. 379, 381 (App. Div. 1998), an insured informed her UIM carrier of a suit she filed against a tortfeasor, and the likelihood that the tortfeasor's insurance coverage would be inadequate to cover her damages. This satisfied the first two notice requirements established in Vassas. Id. at 383-84. The insured, however, settled her suit against the tortfeasor without sending her UIM carrier a Longworth notice, or securing the carrier's permission to do so. Id. at 381, 383-84. The insured sent a letter to the carrier after executing a general release in favor of the tortfeasor. Id. at 381. The letter falsely stated that the tortfeasor had offered to settle the matter and that it was the insured's "intention" to accept the settlement, when insured had

already signed the release and received the settlement proceeds. Id. at 384. In addition, the letter stated that if the carrier elected to preserve its subrogation rights, the insured would refrain from signing the release, and assign her rights to recover from the tortfeasor to the UIM carrier. Ibid. This promise was misleading, as the insured had already released all of her claims.

The carrier responded within thirty days of the notice, requesting more information before it could decide whether to exercise its rights to subrogation. Id. at 385. The carrier later denied UIM coverage, having discovered that the insured had released her claims prior to the Longworth notice. Id. at 381.

When determining whether the insured was precluded from recovering UIM benefits, we explained that:

> The Breitenbach court would apparently also allow an insured relief if the insured was capable of proving "a lack of prejudice" to the insurer, even though the insurer's subrogation right had been extinguished by the release. [295 N.J. Super. at 334]. Presumably, this means, by way of example, if an insured can demonstrate that the underinsured tortfeasor is assetless, and that it is improbable that an insurer would choose to subrogate against the tortfeasor, UIM benefits should not be withheld from the insured.
>
> . . . .
>
> We do not read the Supreme Court's opinion in Vassas to create a bright-line rule that the insured's failure to protect the insurer's right of subrogation

amounts to prejudice per se, sufficient under all circumstances to deny the insured UIM benefits and excuse the insurer from its coverage obligation.

[Id. at 385-86.]

Because the insured "failed to advance any facts demonstrating a lack of prejudice to" the UIM carrier, we affirmed the trial court order dismissing the insured's claim for UIM benefits. Id. at 386; accord CNA Ins. Cos. v. Cave, 332 N.J. Super. 185, 186-88 (App. Div. 2000) (holding an insured's release of claims against one of two alleged tortfeasors with no notice to the UIM carrier is not per se preclusive of a claim for UIM benefits where it was not clear that the released party was actually liable for the insured's injuries). It was under this line of precedents that the trial court resolved NJM's summary judgment motion.

We also reject plaintiff's argument that NJM was required to show it was prejudiced by his or his counsel's actions before denying UIM coverage. As the trial court noted: "To create further exceptions to the law as outlined by Ferrante in this case could lead to a continued unraveling of the current statutory scheme as well as require the court [to] rewrite the contract between the parties." We agree.

The Ferrante court rejected the insured's argument the trial court should have considered whether "he negligently, rather than intentionally, violated

Longworth, [and] . . . conduct a prejudice analysis [where there were] . . . numerous landmarks where Ferrante could have, and should have, but did not notify [his carrier of a settlement with tortfeasor]." 232 N.J. at 474. The Court stated: "Our decision here is not rooted in Ferrante's state of mind, but rather in his actions." Ibid.

Likewise, no such analysis was required here as plaintiff's settlement of the case extinguished NJM's subrogation claim. No discovery was warranted. The undisputed facts support summary judgment in NJM's favor. Plaintiff's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION